# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 14, 2003 Session

## RENA THOMPSON v. CHARLES HENSLEY, ET AL.

**Appeal from the Chancery Court for Monroe County**
**No. 13632     Jerri S. Bryant, Chancellor**

**FILED NOVEMBER 12, 2003**

**No. E2003-00456-COA-R3-CV**

---

Rena Thompson ("Plaintiff") filed this lawsuit claiming her grandson, Charles Hensley, and his wife, Karen Hensley (collectively "Defendants"), breached an oral contract. Specifically, Plaintiff claims she conveyed her house and real property to Defendants in exchange for their oral promise to take care of her and allow her to remain living in the house with them. Plaintiff suffered a stroke and went to live with her son, Perrian Hensley ("Plaintiff's son" or "her son"). After living with her son for approximately one year, Plaintiff wanted to return to her house. When she was not allowed to return to her house, Plaintiff sued Defendants for specific performance. The Trial Court found there was no contract. Plaintiff appeals. We affirm.[1]

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
### Chancery Court Affirmed; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and WILLIAM H. INMAN, SR. J., joined.

J. Lewis Kinnard, Madisonville, Tennessee, for the Appellant Rena Thompson.

Peter Alliman, Madisonville, Tennessee, for the Appellees Charles Hensley and Karen Hensley.

---

[1] Oral argument was heard in this case on October 14, 2003, in Morristown as part of the Court's C.A.S.E. (**C**ourt of Appeals **A**ffecting **S**tudent **E**ducation) project.

# OPINION

## Background

This lawsuit involves a claim for specific performance of an alleged oral contract. Plaintiff's complaint claims she deeded her house and surrounding property to Defendants in exchange for their agreement to take care of her and to allow her to continue residing in the house with them. In their answer, Defendants denied making any such contractual agreement with Plaintiff. When Plaintiff was not allowed to return to her house after suffering a stroke, she sued for specific performance of the alleged oral contract.

Plaintiff's son was the first witness at trial and testified that he currently resides in Tellico Plains on property which also was deeded to him by Plaintiff. Plaintiff's son testified that Plaintiff and her husband, Plaintiff's son's stepfather, moved to Tennessee in 1978 and built a three bedroom house on the property currently at issue. Plaintiff continued to live in this house after her husband passed away in 1981. Plaintiff originally owned approximately fifty acres of land. Plaintiff had discussions with her son about his moving to East Tennessee so he could assist her with keeping up the land, which he eventually did. In 1997, Plaintiff deeded a tract of land to her son and a different tract to Defendants, who by that time also had moved to Tennessee. Plaintiff retained possession of her house and the surrounding real property. Plaintiff's son retired and moved onto the land which Plaintiff had deeded to him, and he eventually built a house there. According to Plaintiff's son, when Defendants first moved to Tennessee from Ohio, they lived with Plaintiff for two months. Defendants then moved into a mobile home located on Plaintiff's land.

Plaintiff's son testified Plaintiff has had four strokes and lived with him for a period of time after each of the strokes. After her third stroke, Plaintiff lived with her son for a period of time while rehabilitating and then began to express a desire to return to her house. Plaintiff eventually returned to her house. After her fourth stroke, Plaintiff once again lived with her son after being released from the hospital. Plaintiff lived with her son for approximately one year and then began to ask about returning to her house. Plaintiff's son told her that he did not think it was wise for her to return to her house due to her medical condition. By that time, Plaintiff had executed a third deed which conveyed the remaining land and her house to Defendants. Plaintiff's son knew that Plaintiff had deeded her remaining property to Defendants. Plaintiff told her son that she was going to sign the house over to Defendants and they were going to move in with her. However, Plaintiff never mentioned any details surrounding why she deeded her house and remaining property to Defendants. Plaintiff's son was not aware of any agreement between Plaintiff and Defendants regarding Plaintiff's being able to live in the house or her long term care. Plaintiff never mentioned any alleged agreement to her son until after he determined that Plaintiff could not return to her house. Plaintiff had been living with her son for approximately one year when he made this determination. Plaintiff's son testified that both Plaintiff and his mother-in-law reside with him and his wife. Although Plaintiff's son does not charge Plaintiff or his mother-in-law any rent, they each "donate" $250.00 per month.

The next witness at trial was Plaintiff. Plaintiff testified she was eighty-three years old and has one son and one grandson. Plaintiff testified Defendant Karen Hensley had expressed a concern about living in the trailer and that she was scared when it stormed. According to Plaintiff, Karen Hensley inquired about whether her family could move in with Plaintiff. Plaintiff agreed that they could. After Defendants moved into Plaintiff's house, Plaintiff told Defendants they could have her house and land "after I'm gone." Plaintiff testified she has had two strokes. The most recent time she was hospitalized was due to complications from medicine, not another stroke. When Plaintiff's son was taking Plaintiff home from the hospital, he suggested Plaintiff stay with him for a few days, which she agreed to do. According to Plaintiff, "I've been there ever since." Plaintiff testified she and her husband built the house in 1978, and her husband passed away in 1981. When Defendants came to live with Plaintiff, they did not pay her any money, "not one dime." Plaintiff also testified that when Defendants moved in, they agreed to "take care of me as long as I lived." Plaintiff testified Karen Hensley told her "I'll see to it personally that you're took care of as long as I live."

On cross-examination, Plaintiff identified the deed and her signature where she conveyed property to her son in 1997. However, when shown the deed where she conveyed property to Defendants in 1997, Plaintiff claimed the signature on the deed looked like her signature, but she did not think it actually was her signature. Plaintiff later testified she was not sure if it was her signature on this deed. Plaintiff admitted that during her deposition she testified that it definitely was not her signature. At trial, Plaintiff stated she never conveyed any property to Defendants, even though her complaint states that she deeded two tracts of property, one of which included her house and surrounding property, to Defendants. Plaintiff specifically denied at trial conveying her house to Defendants.

Portions of Karen Hensley's deposition were entered into evidence at trial. In her deposition, Karen Hensley testified she never entered into any agreement with Plaintiff. According to Karen Hensley, Plaintiff called both Defendants on numerous occasions asking them to move in with her because she could not move back into her home unless someone was with her twenty-four hours a day.

Portions of Charles Hensley's deposition also were read into evidence. In his deposition, Charles Hensley testified that he and his wife originally agreed to move into Plaintiff's house so Plaintiff could return home. Thereafter, Plaintiff once again was hospitalized. When Plaintiff was released from the hospital the last time, her doctor as well as Plaintiff's son would not let her return to the house because she needed twenty-four hour care. According to Charles Hensley, he and his wife are unable to provide Plaintiff with the necessary twenty-four hour care because they are both employed outside of the home. However, Plaintiff's son can provide the needed care because he is retired. Charles Hensley testified it was never his understanding that he or his wife were supposed to provide life time care for Plaintiff in return for Plaintiff's deeding them her property. Charles Hensley maintained both he and his wife never have been in a position to provide this type of care because they are both employed.

-3-

After the above testimony was concluded, Defendants moved for a directed verdict. The Trial Court dismissed Plaintiff's claim, stating as follows:

> Parole evidence is inadmissable to vary the deed. The plaintiff in this case is attempting to show that she gave the deed in exchange for services to be rendered. In order to do that she has to prove a meeting of the minds.
>
> Fraud, undue influence or anything of that nature is specifically not proved in this case.… This deed is not against public policy. It's to give the land to an only grandchild or the child of an only son ….
>
> Plaintiff claims that there has been a wrong and asked this Court to fix [the wrong] in equity. However, plaintiff participated in the wrong and forfeited her right to any relief since she could have protected herself by placing any specific restrictions on this deed and did not do so. So even looking at those reasons along with the proof in this case, there was no outside agreement to take care of her, and the Court is directing a verdict.[2]

After the trial, Plaintiff filed a motion to alter or amend the judgment or for a new trial. After summarizing the proof that had been presented at trial, Plaintiff claimed the "facts and circumstances show all the necessities of an implied contract, and … [this] rule should have been applied by the Court …." The Trial Court denied the motion, and Plaintiff appeals claiming the Trial Court erred when it concluded there was no contract between the parties.

## Discussion

When a motion to dismiss is made at the close of a plaintiff's proof in a non-jury case, the trial court must impartially weigh the evidence as though it were making findings of fact and conclusions of law after presentation of all the evidence. *See* Tenn. R. Civ. P. 41.02(2). If a plaintiff's case has not been established by a preponderance of the evidence, then the case should be dismissed if, on the facts found and the applicable law, the plaintiff has shown no right to relief. *See City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977); *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991). The standard of review of a trial court's decision to grant a Rule 41.02 involuntary dismissal is in accordance with Tenn. R. App. P. 13(d). *Atkins*, 823 S.W.2d at 552. As such, the factual findings of a trial court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates

---

[2]Since this was a non-jury trial, Defendants should have moved for an involuntary dismissal under Tenn. R. Civ. P. 41.02, as opposed to moving for a directed verdict under Tenn. R. Civ. P. 50. For purposes of this appeal, we will treat Defendants' motion as a motion for involuntary dismissal under Rule 41.02.

against them. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

It is well established that a contract can be express, implied, written, or oral, "but an enforceable contract must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced." *Klosterman Development Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002). In the present case, the Trial Court had the ability to assess the demeanor and credibility of those witnesses, including Plaintiff, who testified live at trial. The Trial Court was presented with conflicting versions of whether there was an oral agreement by Defendants to allow Plaintiff to remain in her house and to provide her care for the remainder of her life in return for conveyance of the property. Defendants denied there was any such agreement. Plaintiff insists such an agreement was made, although her testimony was altogether inconsistent with her pleadings as to whether or not she actually conveyed the property to Defendants. "Unlike this Court, the trial court observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). A trial court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Accordingly, we conclude at the outset that the preponderance of the evidence does not weight against the Trial Court's conclusion that "there was no outside agreement [by Defendants] to take care of [Plaintiff] …." Since there was no "agreement" by Defendants to take care of Plaintiff, it necessarily follows that there was no mutual assent or meeting of the minds regarding the terms of the alleged oral contract. As there was no agreement between the parties to the terms, the Trial Court correctly found there was no express oral contract in existence.

Tennessee recognizes "two distinct types of implied contracts; namely, contracts implied in fact and contracts implied in law, commonly referred to as quasi contracts." *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997)(quoting *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 53-54, 407 S.W.2d 150, 154 (1966)). A contract implied in fact is "one that 'arises under circumstances which show mutual intent or assent to contract.'" *Givens v. Mullikin*, 75 S.W.3d 383, 407 (Tenn. 2002)(quoting *Angus*, 968 S.W.2d at 808). However, in order for a contract implied in fact to be enforceable, it must be supported by mutual assent, consideration, and lawful purpose. *Mullikin*, 75 S.W.3d at 407. An express oral contract and a contract implied in fact are very similar with the primary difference between them being the manner in which the parties manifest their assent. "In an express contract, the parties assent to the terms of the contract by means of words, writings, or some other mode of expression…. In a contract implied in fact, the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract." *River Park Hospital, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, No. M2001-00288-COA-R3-CV,

2002 Tenn. App. LEXIS 723, at *33 (Tenn. Ct. App. Oct. 11, 2002), *appl. perm. appeal denied* Feb. 18, 2003. Likewise, we find nothing in the record before us that would preponderate against the Trial Court's finding that Defendants did not agree to take care of Plaintiff, including "the conduct of the parties and the surrounding circumstances." *Id.* As such, there also was no contract implied in fact. *See Mullikin*, 75 S.W.3d at 407 ("an implied contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, [and] must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced'")(quoting *Johnson v. Central Nat'l Ins. Co.*, 210 Tenn. 24, 34-35, 356 S.W.2d 277, 281 (1962)).

Plaintiff also argues that there was a contract implied in law. As observed by this Court in *Angus*:

> Contracts implied in law are created by law without the assent of the party bound, on the basis that they are dictated by reason and justice. *Weatherly v. American Agr. Chem. Co.*, 16 Tenn. App. 613, 65 S.W.2d 592 (1933). A party seeking to recover on an implied in law or quasi contract theory must prove the following:
>
> > A benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.

*Angus*, 968 S.W.2d at 808 (quoting *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 57, 407 S.W.2d 150, 155 (1966)).

Certainly, Defendants herein were conferred a benefit by Plaintiff. We will assume that the second element, i.e. appreciation by Defendants of such benefit, likewise has been met. The question then becomes whether it is inequitable under the circumstances for Defendants to retain the benefit without payment of the value thereof. *Angus*, 968 S.W.2d at 808. At trial, Plaintiff denied ever conveying any property to Defendants. In her complaint, however, Plaintiff claims she deeded her house to Defendants on May 11, 1999. Plaintiff never has alleged that the conveyance of the property to Defendants should be set aside because it was the result of fraud, undue influence, or the like. It is implicit in the Trial Court's opinion that it found there was a valid conveyance of the property at issue, as evidenced by the Trial Court's comments that "[f]raud, undue influence or anything of that nature is specifically not proved in this case.… This deed is not against public policy. It's to give the land to an only grandchild or the child of an only son …."

To summarize: (1) there was a valid conveyance of the property to Defendants; (2) there was no express or implied in fact contract by Defendants to provide long term care to Plaintiff or to allow her to remain in the house; (3) Plaintiff needs twenty-four hour care; (4) Defendants are

not and never have been in a position to provide that care; and (5) Plaintiff is residing with her son who can and does provide Plaintiff the necessary care. In light of the foregoing, we are unable to conclude that under these particular circumstances, it is inequitable for Defendants "to retain the benefit without payment of the value thereof." *Angus*, 968 S.W.2d at 808. Therefore, Plaintiff likewise has failed to establish an oral contract implied in law.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for further proceedings as are necessary, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant Rena Thompson and her surety.

 

 

_____

D. MICHAEL SWINEY, JUDGE