Karen E. **FERGUSON**

v.

**NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, et al.**

No. **M2005–02602–COA–R3–CV.**

Court of Appeals of Tennessee, at Nashville.

Assigned on Briefs Aug. 17, 2006.

Dec. 15, 2006.

David L Cooper, Nashville, Tennessee, for the appellant, Karen E. Ferguson.

Parks T. Chastain, David M. Hannah, Nashville, Tennessee, for the appellee, Nationwide Property & Casualty Insurance Company.

M. Bradley Gilmore, Frank M. Gallina, Nashville, Tennessee, for the appellee, Edwin B. Raskin Company.

## OPINION

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Apartment manager filed an action against employer and employer's insurance carrier after they refused to reimburse her for the losses she incurred as a result of a fire that began in the apartment's main office which was connected to her personal apartment. We affirm the judgment of the trial court granting summary judgment to the defendants.

Ms. Karen E. Ferguson was employed by Edwin B. Raskin Company ("Raskin") as the on-site property manager of the Royal Oaks Apartments ("Royal Oaks") in Ashland City, Tennessee. As a condition of employment, Ms. Ferguson resided at Royal Oaks and a portion of her apartment was used as Royal Oaks' main office. In addition to monetary compensation, Raskin paid Ms. Ferguson's rental expenses including rent, electricity, water, sewer, and phone service.

On January 19, 2005, a fire broke out in Ms. Ferguson's apartment, destroying all of her personal property. The fire marshal determined that the fire was caused by a halogen floor lamp located within the main office portion of Ms. Ferguson's apartment. Evidently, Ms. Ferguson left the lamp on for extended periods of time for safety purposes. On the date at issue, the lamp which could reach 850 degrees Fahrenheit caused papers pinned to a nearby wall to ignite. Although Ms. Ferguson believed that Raskin owned the lamp since it was present when she moved into the apartment, Raskin claimed that the lamp was in fact owned by Royal Oaks.

On January 30, 2005, Ms. Ferguson notified Raskin by letter that her personal property loss as a result of the fire totaled

$75,586.12 and that the loss needed to be paid immediately. Ms. Ferguson also submitted a claim for the loss to Nationwide Property & Casualty Insurance Company ("Nationwide") under the policy issued to Royal Oaks. By letter dated February 3, 2005, Nationwide denied Ms. Ferguson's claim.

As a result, Ms. Ferguson filed a complaint against Nationwide and Raskin on April 14, 2005. She alleged that Nationwide and Raskin wrongfully and willfully denied her claim, which constituted a breach of contract, a breach of implied good faith and fair dealing, and a showing of bad faith. Ms. Ferguson further alleged damages against Nationwide under Tennessee Code Annotated section 56–7–105 and the Tennessee Consumer Protection Act.

On July 20, 2005, Raskin filed a motion for judgment on the pleadings for failure to state a claim upon which relief could be granted, claiming that Ms. Ferguson's claims against it should be dismissed as a matter of law. On August 11, 2005, Nationwide filed a motion for summary judgment, asserting that Ms. Ferguson was not a covered insured under the policy, that there was no bad faith under Tennessee Code Annotated section 56–7–105 or a violation of the Tennessee Consumer Protection Act, and that Ms. Ferguson could not maintain a direct action against it.

On September 23, 2005, Ms. Ferguson sought to amend her complaint to allege that Raskin was negligent in placing an unreasonably dangerous and/or defective lamp in her apartment. The motions were heard before the trial court on October 3, 2005. An order was entered by the court on October 21, 2005, granting Defendants Nationwide and Raskin's motions, denying Ms. Ferguson's motion to amend, and dismissing Ms. Ferguson's cause of action with prejudice. Ms. Ferguson appeals

claiming that the trial court erred in (1) granting Raskin's motion for summary judgment; (2) granting Nationwide's motion for summary judgment; and (3) denying her motion to amend her complaint to assert a cause of action against Raskin for negligence.

## I.

 As the trial court noted in its October 21, 2005, order granting Defendants' motion for summary judgment, the original motion filed by Raskin was one for a judgment on the pleadings while Nationwide's motion was one for summary judgment. As this Court duly noted in *Pendleton v. Mills*, 73 S.W.3d 115, 120 (Tenn.Ct.App.2001), "[t]he difference between a motion to dismiss and a motion for summary judgment is more than academic when it comes to standard of review." However, it is well settled that "a Tenn. R. Civ. P. 12.02(6) motion must be converted to a summary judgment motion if 'matters outside the pleadings are presented to and not excluded by the court.'" *Pendleton*, 73 S.W.3d at 120 (quoting *Pacific Eastern Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 952 (Tenn.Ct.App. 1995)). In this case, Raskin filed the affidavit of Bill Simons, regional manager of Raskin, as well as a copy of Raskin's standard lease agreement in support of its motion. The affidavit and the lease agreement were considered by the trial court in making its determination, therefore we find that Raskin's motion to dismiss was properly converted to a motion for summary judgment.

The standards for reviewing summary judgments on appeal are well-settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn.1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.

1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn.Ct.App.2000). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion-that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn.2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Goodloe v. State*, 36 S.W.3d 62, 65 (Tenn.2001).

The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn.1998); *Belk v. Obion County*, 7 S.W.3d 34, 36 (Tenn.Ct.App.1999). In order to be entitled to a judgment as a matter of law, the moving party must either affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Byrd v. Hall*, 847 S.W.2d at 215 n. 5; *Cherry v. Williams*, 36 S.W.3d 78, 82–83 (Tenn.Ct.App.2000).

Once the moving party demonstrates that it has satisfied Tenn. R. Civ. P. 56's requirements, the non-moving party must demonstrate how these requirements have not been satisfied. *Nelson v. Martin*, 958 S.W.2d 643, 647 (Tenn. 1997). Mere conclusory generalizations will not suffice. *Cawood v. Davis*, 680 S.W.2d 795, 796–97 (Tenn.Ct.App.1984). The non-moving party must convince the trial court that there are sufficient factual disputes to warrant a trial (1) by pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) by rehabilitating evidence challenged by the moving party, (3) by producing additional evidence that creates a material factual dispute, or (4) by submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn.1998); *Byrd v. Hall*, 847 S.W.2d at 215 n. 6. A non-moving party who fails to carry its burden faces summary dismissal of the challenged claim because, as our courts have repeatedly observed, the "failure of proof concerning an essential element of a cause of action necessarily renders all other facts immaterial." *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn.1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn.Ct.App. 1995).

Summary judgments enjoy no presumption of correctness on appeal. *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn.2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn.2000). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn.1997). We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn.2001). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is

material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall,* 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn.Ct.App.1998).

*Pendleton,* 73 S.W.3d at 121–22.

## II.

■ Ms. Ferguson first contends that the trial court improperly granted Raskin's motion for summary judgment because there was a genuine issue of material fact as to whether the parties entered into an implied contract in which Raskin was bound to insure or indemnify Ms. Ferguson from personal property loss. According to Ms. Ferguson, Raskin's requirement that she live on the premises although she was unable to obtain renter's insurance as a result of Royal Oaks maintaining an office within the confines of her apartment, created an implied contract in which Raskin would cover Ms. Ferguson's personal property under its insurance policy. However, we believe that Ms. Ferguson has failed to present any evidence that such a contract existed other than her own subjective belief.

■ "It is well established that a contract can be express, implied, written, or oral, 'but an enforceable contract must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced.'" *Thompson v. Hensley,* 136 S.W.3d 925, 929–30 (Tenn.Ct.App. 2003) (quoting *Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.,* 102 S.W.3d 621, 635 (Tenn.Ct.App.2002)). Ms. Ferguson does not allege that there was any express agreement between the parties. Therefore, we will limit our analysis to whether there was any evidence of an implied contract.

■ "Tennessee recognizes 'two distinct types of implied contracts; namely, contracts implied in fact and contracts implied in law, commonly referred to as quasi contracts.'" *Thompson,* 136 S.W.3d at 930 (quoting *Angus v. City of Jackson,* 968 S.W.2d 804, 808 (Tenn.Ct.App.1997)). "A contract implied in fact is one that 'arises under circumstances which show mutual intent of assent to contract.'" *Thompson,* 136 S.W.3d at 930 (quoting *Angus,* 968 S.W.2d at 808). "However, in order for a contract implied in fact to be enforceable, it must be supported by mutual assent, consideration, and lawful purpose." *Thompson,* 136 S.W.3d at 930. Mutual assent may be shown by the conduct of the parties and the surrounding circumstances. *Thompson,* 136 S.W.3d at 930.

We can find no evidence of Raskin's assent to provide Ms. Ferguson with renter's insurance or to cover Ms. Ferguson's belongings under Royal Oaks' own insurance policy. In support of its motion for summary judgment, Raskin filed the affidavit of Bill Simons, Raskin's regional manager and Ms. Ferguson's immediate supervisor. Mr. Simons was charged with the duty to discuss with Ms. Ferguson the terms and conditions of her employment. According to Mr. Simons, he and Ms. Ferguson never discussed the possibility that Raskin would cover Ms. Ferguson's personal property in the event of a fire. His affidavit stated:

4. Prior to the fire, neither Karen Ferguson nor I had ever mentioned or conversed about the Raskin's bearing the risk of loss of or damage to her personal property, or about her personal property being covered under Raskin's insurance policy, or about Raskin agreeing to procure insurance to cover her personal

property. In short, there was no discussion about this topic or these topics prior to the fire on January 19, 2005.

Additionally, Ms. Ferguson admitted in a telephone conversation with a claims handler at Nationwide that she did not recall having a particular conversation with Mr. Simons about Raskin obtaining coverage for her personalty. Mr. Simons further stated in his affidavit that Ms. Ferguson was required to sign a standard lease agreement although she was permitted to live in Royal Oaks rent free as a part of her compensation. A provision in the lease agreement specifically advised Ms. Ferguson of the need to obtain renter's insurance. The lease stated:

13. PERSONAL PROPERTY. ALL PERSONAL PROPERTY IN THE LEASED UNIT SHALL BE AT THE RISK OF LESSEE ONLY AND LESSOR SHALL NOT BE LIABLE FOR ANY DAMAGES OR LOSSES TO PERSON OR PROPERTY CAUSED BY OTHER RESIDENTS OR PERSONS[,] THEFT, BURGLARY, ASSAULT, VANDALISM, OR OTHER CRIMES. LESSOR shall not be liable for personal injury or for damage to or loss of LESSEE'S personal property (furniture, jewelry, clothing, automobiles, etc.) from whatever cause, including fire, flood ... LESSOR STRONGLY RECOMMENDS THAT LESSEE SECURE LESSEE'S OWN INSURANCE TO PROTECT AGAINST ALL OF THE ABOVE OCCURRENCES ...

Based upon Ms. Ferguson's failure to provide any evidence of Raskin's assent to provide her with insurance coverage, we find that the trial court properly granted Raskin's motion for summary judgment as to Ms. Ferguson's contract implied in fact claim.

■ We must now determine whether the trial court properly granted summary judgment as to Ms. Ferguson's contract implied in law claim. "Contracts implied in law are created by law without the assent of the party bound, on the basis that they are dictated by reason and justice." *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn.Ct.App.1997). The Tennessee Supreme Court has established that a party seeking to recover on an implied in law or quasi contract theory must prove the following elements:

(1) There is no existing, enforceable contract between the parties covering the same subject matter;

(2) The party seeking recovery proves that it provided valuable goods or services;

(3) The party to be charged received the goods or services;

(4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and

(5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*Doe v. HCA Health Services of Tenn., Inc.,* 46 S.W.3d 191, 197–98 (Tenn.2001).

It is undisputed that there was no express contract between the parties and we have determined that there was no contract implied in fact. In addition, Ms. Ferguson's agreement to reside at Royal Oaks in order to be available to tenants twenty-four hours a day, undoubtedly conferred a benefit upon Raskin. Furthermore, Raskin does not dispute that Ms. Ferguson expected and deserved to be compensated for residing at Royal Oaks in

her capacity as the apartment manager. However, the weakness in Ms. Ferguson's argument arises in the payment for her services.

As with all equitable contractual remedies, the plaintiff must demonstrate that the defendant accepted a benefit under the circumstances that would make it inequitable for the defendant to retain the benefit without paying the value of the benefit. *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154 (1966). "The most significant requirement for a recovery on quasi contract is that the enrichment to the defendant must be unjust." *Paschall's, Inc.*, 407 S.W.2d at 155. We cannot make such a finding here. In exchange for her services as the live-in apartment manager of Royal Oaks, Ms. Ferguson received monetary compensation as well as payment of her rental expenses which included rent, electricity, water, sewer, and phone service. Raskin was not contractually bound to provide Ms. Ferguson with rental insurance simply because she had difficulty obtaining a private policy as a result of Raskin maintaining an office within the confines of her apartment.

As a general rule employees have the right to negotiate with the employer concerning wages and to make such demands as to the amount of wages as to them seems right, and the employer has the right to determine the wages he is willing to pay employees. Ordinarily the employer is entitled to accept or reject the terms of wages proposed by the employees or their representatives, and, on rejection, to decline to continue employment.

Where the terms of the employment contract fix the compensation of an employee for his services, such provisions determine the amount of his recovery, irrespective of what the services are actually worth. Accordingly, wherever work is done by one for another for a price named by one and acquiesced in by the other, the amount named is the amount recoverable.

30 C.J.S. *Employer–Employee* § 164 (1992).

It is well-settled that courts should not interfere with the right of parties to contract. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 100 (Tenn.1999). Instead, it is the duty of the court to "carry out the intentions of the parties and the terms bargained for in the contract, unless those terms violate public policy" even if a party agrees to "terms that may not seem desirable or pleasant to outside observers." *Guiliano*, 995 S.W.2d at 100. Therefore, it was incumbent upon Ms. Ferguson to negotiate for renter's insurance as a term of her compensation if that is what she desired. As a result, we find that the trial court properly granted summary judgment as to Ms. Ferguson's contract implied in law claim.

### III.

Ms. Ferguson next argues that the trial court erred in granting summary judgment as to her breach of contract claim against Nationwide because there was a genuine issue of material fact as to whether her personal property was excluded from coverage under Royal Oaks' insurance policy. On February 3, 2005, Nationwide sent Ms. Ferguson a letter denying coverage for her loss. Nationwide explained that as an employee of the insured policy holders, Raskin and Royal Oaks, Ms. Ferguson was also classified as "an insured" under the policy and therefore subject to the same policy exclusions. Pursuant to section B(k)(1) of the policy, the coverage did not apply to " '[p]roperty damage' to [p]roperty you own, rent, or occupy." Ms. Ferguson argues that according to an exception to the section

B(k)(1) exclusion, she is not "an insured" and therefore her personal property was covered under the policy.

 It is clear that if Ms. Ferguson is "an insured" under the policy, then coverage of her personal property is excluded by section B(k)(1) of the policy. Ms. Ferguson claims that because of section C(2)(a)(3) of the policy, she may not be classified as "an insured." This section of the policy provides:

2. Each of the following is also an insured:

a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

(3) "Property damage" to property owned or occupied by or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

If Ms. Ferguson is not "an insured" under the policy, she cannot maintain a direct action against Nationwide without first establishing that the insured, Raskin, has become "legally obligated" to pay the damages resulting from her personal property loss which would trigger the obligation of Nationwide to pay on behalf of Raskin under the liability section of the policy since "Tennessee is not a 'direct action' state where a plaintiff can sue the liability insurance carrier of the defendant who allegedly caused the harm." *Seymour v. Sierra*, 98 S.W.3d 164, 165 (Tenn. Ct.App.2002).

The reason for the common law rule in jurisdictions where there is neither a statute nor a policy provision allowing such direct action is well stated by the Superior Court of Delaware in *Delmar News, Inc. v.*

*Jacobs Oil Co.*, 584 A.2d 531 (Del.Super.Ct.1990):

In support of its argument that Delaware does not permit direct actions against insurers in situations such as this, MCC offers the case of *Kaufmann v. McKeown*, Del.Supr., 193 A.2d 81 (1963). While *Kaufmann* dealt primarily with the application of the Dead Man's Act, the Court briefly, but squarely, addressed the issue of whether or not an injured party could maintain a direct action against an insurer for the negligent acts of its insured. The Court stated:

"A liability insurer may well be the real party in interest, but this is not a State where a direct action is permitted against it. Plaintiff is obliged to bring his suit against the tortfeasor or in the event of her demise, her estate."

*Id.* at 83.

Aside from *Kaufmann*, the parties herein have not identified and the Court has not uncovered any Delaware case law which specifically addresses this issue. Other jurisdictions, however, apply a similar rule. In *Dept. of General Serv. v. Celli–Flynn*, 115 Pa.Cmwlth. 494, 540 A.2d 1365 (1988), the Court specifically faced this issue and concluded that Pennsylvania law, in the absence of a statutory or policy provision to the contrary, does not permit an injured party to maintain a direct action against the tortfeasor's insurer. *Id.* 540 A.2d at 1367. In fact, the holding in *Kaufmann, supra* and *Department of General Services, supra*, appears to be the general rule followed by most jurisdictions. *See: Caster v. Board of Education of Albuquerque*, 86 N.M. 779, 527 P.2d 1217 (1974); *Manukas v. American Ins. Co.*, 98 N.J.Super. 522, 237 A.2d 898 (1968); *Gorman v. St. Paul Fire & Marine In-*

*surance Co.*, 210 Md. 1, 121 A.2d 812 (1956). *See also* 44 Am.Jr.2d, *Insurance,* § 1445 (1982); 8 Appleman, *Insurance Law and Practice,* § 4861 (1981). The rationale behind this rule appears to be simply that the Courts feel that it would not be sound public policy to permit an insurer to be joined as a defendant in an action grounded upon the acts of the insured. *See* Appleman § 4861 at 565.

Therefore, on the authority of *Kaufmann, supra,* and in light of the position taken by other jurisdictions on this issue, the Court concludes that the law in Delaware is that Delmar may not, at this time, maintain a direct action against MCC grounded upon the alleged negligence of Jacobs. Delmar's personal injury action must first be brought against the alleged tortfeasor—in this case Jacobs. Even if Delmar were permitted to sue MCC directly, it would obtain little advantage since Jacobs' liability for negligence must still be proved in an action against MCC. On this basis it cannot be said that the Court's conclusion results in unfairness to Delmar.

584 A.2d at 533–34.

Addressing the same long-standing rule at common law, the Nebraska Court of Appeals held:

Therefore, in summary, this case seeks recovery from Federated based on the negligence of its insured.

The Nebraska Supreme Court has stated: "[A]s a general rule, there is no privity between an insured person and the tort-feasor's liability insurer. For this reason, direct actions against liability insurance carriers based on the negligence of the insured are not permitted in Nebraska." *Medical Protective Co. v. Schrein,* 255 Neb. 24, 30, 582 N.W.2d 286, 290 (1998). Accord, *West Neb. Gen. Hosp. v. Farmers Ins. Exch.,* 239 Neb. 281, 475 N.W.2d 901 (1991); *State Auto.*

*& Cas. Underwriters v. Farmers Ins. Exchange,* 204 Neb. 414, 282 N.W.2d 601 (1979). *See Royal Indem. Co. v. Aetna Cas. & Sur. Co.,* 193 Neb. 752, 229 N.W.2d 183 (1975). In our review of Nebraska jurisprudence, we find no exceptions to the above general rule.

The basis for the lawsuit in *State Auto. & Cas. Underwriters, supra,* is similar to that before us. In *State Auto. & Cas. Underwriters,* the car insured by State Automobile and Casualty Underwriters (State Auto) was struck by the car insured by Farmers Insurance Exchange (Farmers). State Auto paid its insured's claim and sought subrogation from Farmers based on the negligence of Farmers' insured.

Nebraska jurisprudence is consistent with common law. "Under ordinary principles of law, in the absence of statutes or contractual agreements to the contrary, the law did not historically recognize the right of the injured party to seek recovery directly from the insurer, with which the victim had no direct relationship." 7 George J. Couch, Couch on Insurance 3d § 104:1 at 104–7 (rev.ed.1997). See, also, 44 Am.Jur.2d *Insurance* § 1445 (1982). The above proposition applies to claims by an injured party against an insurer under both automobile liability insurance and under other forms of liability insurance, "at least where the direct action is on the basis of the insured's negligence." Couch, *supra,* § 104:2 at 104–11 to 104–12.

*German Mut. Ins. Co. of Dodge County v. Federated Mut. Ins. Co.,* 8 Neb.App. 1062, 606 N.W.2d 856, 859–60 (2000).

The Supreme Court of Idaho, another jurisdiction not recognizing direct actions of a third party against a tortfeasor insurance carrier, held:

Farmers' argument is well taken. A third party may not directly sue an in-

surance company in an attempt to obtain the coverage allegedly due the insurer's policyholder. In *Pocatello Indus. Park Co. v. Steel West, Inc.,* 101 Idaho 783, 621 P.2d 399 (1980), Pocatello Industrial Park and its liability insurer sought indemnification from an employer and its liability insurer for liability imposed in a prior action brought by an employee against Industrial Park. The Court stated as follows:

> It is well established that absent a contractual or statutory provision authorizing the action, an insurance carrier cannot be sued directly and cannot be joined as a party defendant.... We are aware of no direct action statute in Idaho.

*Id.* at 791, 621 P.2d at 407, (citing *Olokele Sugar Co. v. McCabe, Hamilton & Renny Co.,* 53 Haw. 69, 487 P.2d 769 (1971)); *see also, Hettwer v. Farmers Ins. Co. of Idaho,* 118 Idaho 373, 797 P.2d 81 (1990).

In *Downing v. Travelers Ins. Co.,* 107 Idaho 511, 691 P.2d 375 (1984), the plaintiff brought a direct action against the insurer of her husband's employer, claiming benefits under a policy provided to her deceased husband as part of his employment. The Court upheld summary judgment favoring the insurance company, stating:

> This is a direct action against an insurer, by a party not a party to the insurance contract. The situation here is similar to a case where A injures B, B has a liability insurance policy with C, and A attempts to sue C directly to recover benefits under the policy. This type of direct action has never been recognized.

*Id.* at 514, 691 P.2d at 378.

*Stonewall Surplus Lines Ins. Co. v. Farmers Ins. Co. of Idaho,* 132 Idaho 318, 971 P.2d 1142, 1146 (1998).

The United States Seventh Circuit Court of Appeals, in a diversity jurisdiction case, applying Indiana law held:

> Indiana is not a "direct action" state, meaning that an injured third party may not bring a direct action against a wrongdoer's liability insurer until he first obtains a judgment against the insured. *Rausch v. Reinhold,* 716 N.E.2d 993, 1002 (Ind.Ct.App.1999); *Cromer v. Sefton,* 471 N.E.2d 700, 703 (Ind.Ct.App. 1984); *Donald v. Liberty Mutual Ins. Co.,* 18 F.3d 474, 480–81 (7th Cir.1994). Once a personal injury plaintiff succeeds in obtaining a judgment against the insured, he can bring an action against the liability carrier if it refused to honor the terms of the insurance policy. *Cromer,* 471 N.E.2d at 703. In other words, in Indiana an injured plaintiff "stands in the legal shoes" of the insured, and his claim can be no greater than the insured's claim would be against his own insurer under the insurance policy. *See Araiza v. Chrysler Ins. Co.,* 699 N.E.2d 1162, 1163 (Ind.Ct.App.1998), *rehearing granted in part and modified in, Araiza v. Chrysler Ins. Co.,* 703 N.E.2d 661 (Ind.Ct.App.1998); *see also Selleck v. Westfield Ins. Co.,* 617 N.E.2d 968, 970–71 (Ind.App.1993) *(accord );* *Redar v. Allstate Ins. Co.,* 497 N.E.2d 566, 568 (Ind.Ct.App.1985)*(accord );* *Motorists Mut. Ins. Co. v. Johnson,* 139 Ind.App. 622, 218 N.E.2d 712, 715 (1966).

*Wolverine Mut. Ins. v. Vance ex rel. Tinsley,* 325 F.3d 939, 944 (7th Cir.2003).

The Third Circuit Court of Appeals, applying Pennsylvania law, has held:

> Under Pennsylvania law, "in the absence of a statute or a policy provision on which such right may be predicated, a person may not maintain a suit directly against [an] insurer to recover on a

judgment rendered against the insured." *Philadelphia Forrest Hills Corp. v. Bituminous Cas. Corp.*, 208 Pa.Super. 461, 222 A.2d 493, 494 (1966); *see also Apalucci v. Agora Syndicate, Inc.*, 145 F.3d 630, 632 (3d Cir.1998) ("It is well-settled that under Pennsylvania law, an injured party has no right to directly sue the insurer of an alleged tortfeasor unless a provision of the policy or a statute create such a right."); *Strutz v. State Farm Mut. Ins. Co.*, 415 Pa.Super. 371, 609 A.2d 569, 570 (1992) (rejecting an argument that persons injured in a car accident are third-party beneficiaries of the other driver's insurance policy and therefore could bring an action directly against the other driver's insurance company).

*Kollar v. Miller*, 176 F.3d 175, 181 (3rd Cir.1999). *See also Olokele Sugar Co. v. McCabe, Hamilton & Renny Co.*, 53 Haw. 69, 487 P.2d 769 (1971); *Richards v. State Farm Mut. Auto. Ins. Co.*, 252 Ga.App. 45, 555 S.E.2d 506 (2001).

Ms. Ferguson argues however that she is an intended third-party beneficiary to Raskins' insurance contract with Nationwide and, therefore, has an independent right to enforce the contract. It is undisputed that Raskin and Nationwide have a valid contract, which provides in part that Nationwide "will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' ... to which this insurance applies."

■ As a general rule, contracts are presumed to be "executed for the benefit of the parties thereto and not third persons." *Oman Constr. Co. v. Tennessee Central Rlwy. Co.*, 212 Tenn. 556, 370 S.W.2d 563, 572 (1963). The law in Tennessee relative to "intended third-party beneficiaries" as opposed to "incidental third-party beneficiaries" is explained in detail in *First Tenn. Bank Nat'l Ass'n v.*

*Thoroughbred Motor Cars, Inc.*, 932 S.W.2d 928 (Tenn.Ct.App.1996) and in *Owner–Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63 (Tenn.2001).

■ At the outset of this discussion, it is necessary to observe that Ms. Ferguson has no judgment against Raskin, which might support a third-party beneficiary action against Nationwide such as occurred in *Franklin v. St. Paul Fire & Marine Ins. Co.*, 534 S.W.2d 661 (Tenn.Ct.App. 1975). The rights of any third-party to the insurance contract are derivative rights and can rise to no greater dignity than the rights of the insured under the contract. *Jamison v. New Amsterdam Cas. Co.*, 36 Tenn.App. 267, 254 S.W.2d 353, 355 (1953). This Court has held:

In 1967, our supreme court first announced the test to be used to determine whether a person claiming to be a third party beneficiary should also be permitted to enforce a contract. *Willard v. Claborn*, 220 Tenn. 501, 419 S.W.2d 168, 170 (1967). The court stated

In contracts there are essentially three types of third party beneficiaries. First, where the performance of the promise will constitute a gift to the beneficiary; the beneficiary is a donee beneficiary. Second, if no purpose to make a gift appears from the terms of the contract and the performance of it will satisfy an actual or supposed asserted duty of the promisee to the beneficiary; the beneficiary is a creditor beneficiary. Third, in all other cases the beneficiary is deemed to be an incidental beneficiary.

*Id.* Under this formulation, a donee or creditor beneficiary has the right to enforce contracts made by others for her benefit. However, incidental beneficiaries do not have that right. *Id.*

Today, Tennessee recognizes two categories of third party beneficiaries, intended and incidental. Only if a party is an intended beneficiary may it maintain an action to enforce the contract. *Moore Construction Co. v. Clarksville Department of Electricity,* 707 S.W.2d 1, 9 (Tenn.App.1985). In order to establish that plaintiff is an intended beneficiary to the sales agreement in this case, it must establish (1) a valid contract made upon sufficient consideration between the principal parties and (2) the clear intent to have the contract operate for the benefit of a third party. *United American Bank of Memphis v. Gardner,* 706 S.W.2d 639, 641 (Tenn.App.1985). Intent to benefit may be shown if "there is either an expression in the contract that the contracting parties intended to benefit the third party (the 'intent to benefit' test) or proof that the promisor's performance would otherwise discharge a duty owed to a third party beneficiary by the promisee (the 'duty owed' test)." *Moore Construction,* 707 S.W.2d at 9 (citing *Restatement (Second) of Contracts* § 302 (1979)).

*First Tenn. Bank Nat'l Ass'n,* 932 S.W.2d at 930.

The extensive discussion of third-party beneficiary rights contained in *Owner–Operator Indep. Drivers Ass'n, Inc.,* does not change the distinction between intended beneficiaries and incidental beneficiaries, which remains the ultimate test.

Nationwide has not become "legally obligated to pay as damages" any amount owed by Raskin because such an obligation has never been established. While Tennessee has not directly addressed the question of the rights of one claiming to be a third-party beneficiary to an insurance contract who has never been granted a judgment against the insured, cases from sister jurisdictions make it clear that in the absence of a policy provision or a statute, such a third party is at most an "incidental beneficiary" of the insurance contract and cannot maintain an action against the insurance company.

Applying both Texas and Mississippi law, the United Stated District Court for the Southern District of Mississippi in *Cowley v. Texas Snubbing Control, Inc.,* 812 F.Supp. 1437 (S.D.Miss.1992) held:

There is no question but that Stapleton is not a third-party beneficiary of the insurance contract between Underwriters and Texas Snubbing. Stapleton has cited the court to no statute or provision in the insuring agreement granting him rights in the policy prior to securing a judgment or granting him the right to file suit against Underwriters for recovery under the policy prior to his obtaining a judgment against the insured. In other words, the insurance coverage provided by Texas Snubbing's policy was not mandated by law, and the court has not been directed to any provision of the policy which suggests that the insurance contract was secured for the benefit of any third party to the contract. Rather, it appears that the policy of insurance was purchased for Texas Snubbing's own benefit, as well as for the benefit and protection of Tomlinson. Though Stapleton has filed suit against Texas Snubbing in state court alleging that it was negligent, he has not recovered a judgment against Texas Snubbing, and indeed, may never do so. There has been no determination that Texas Snubbing was negligent, or that if it was, any such negligence caused or contributed to any injuries these persons may have sustained. Under these circumstances, it must be concluded that Stapleton is not a third-party beneficiary of the insurance contract and therefore lacks standing to maintain any claim

against the insurance policy. Thus, only if Stapleton were to secure a judgment against Texas Snubbing would he be in a position to maintain a direct action against Underwriters on the insurance contract.

812 F.Supp. at 1446.

The Supreme Court of Wyoming observed:

Appellants argue secondly that they are third-party beneficiaries of the insurance contract who should be able to bring an action directly against Farmers Insurance for a violation of the duty of good faith and fair dealing with Angela. . . . The third-party-beneficiary argument has been rejected by virtually every court to address the issue, and we join those courts today. *See, e.g., Page v. Allstate Insurance Company,* 126 Ariz. 258, 614 P.2d 339 (Ct.App.1980); *Scroggins v. Allstate Insurance Company,* 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1979); and *Murphy v. Allstate Insurance Company,* 17 Cal.3d 937, 132 Cal.Rptr. 424, 553 P.2d 584 (1976).

We hold that the duty of good faith and fair dealing runs only from the insurer to the insured. As Appellants are third-party claimants in the context of this suit, they have no direct cause of action against Farmers Insurance for bad faith, either in contract or in tort.

*Herrig v. Herrig,* 844 P.2d 487, 492 (Wyo. 1992).

The reasoning of the Superior Court of Pennsylvania in *Brown v. Candelora,* 708 A.2d 104 (Pa.Super.Ct.1998) is persuasive.

Under settled Pennsylvania law, appellants cannot maintain a direct action against Nationwide since:

(a) Appellants are strangers to the contract of insurance. *See: Commonwealth, Department of General Ser-*

*vices v. Celli–Flynn,* 115 Pa.Cmwlth. 494, 498, 540 A.2d 1365, 1368 (1988); *Aetna Insurance Co. v. Pennsylvania Manufacturers Association Insurance Co.,* 456 F.Supp. 627, 634 (E.D.Pa. 1978). *See also: General Accident Insurance Co. v. Federal Kemper Insurance Co.,* 452 Pa.Super. 581, 589, 682 A.2d 819, 822 (1996); *Kranzush v. Badger State Mutual Casualty Co.,* 103 Wis.2d 56, 72, 307 N.W.2d 256, 265 (1981).

(b) Appellants are not third party beneficiaries of the contract of insurance between Mr. Yiambilis and Nationwide. *See: Hicks v. Metropolitan Edison Co.,* 665 A.2d 529, 535 (Pa. Cmwlth.1995), *allo. denied,* 544 Pa. 638, 675 A.2d 1253 (1996); *Hughes v. Prudential Lines,* 425 Pa.Super. 262, 268, 624 A.2d 1063, 1067 (1993), *allo. denied,* 535 Pa. 647, 633 A.2d 152 (1993); *Strutz v. State Farm Mutual Insurance Co.,* 415 Pa.Super. 371, 373–376, 609 A.2d 569, 570–571 (1992), *allo. denied,* 532 Pa. 657, 615 A.2d 1313 (1992); *Rowe v. U.S. Fidelity and Guaranty Co.,* 421 F.2d 937, 939–940 (4th Cir.1970). *Accord: Herrig v. Herrig,* 844 P.2d 487, 492 (Wyo.1992) ("The third-party-beneficiary argument has been rejected by virtually every court to address the issue, and we join those courts today. *See, e.g., Page v. Allstate Insurance Company,* 126 Ariz. 258, 614 P.2d 339 (Ct.App. 1980); *Scroggins v. Allstate Insurance Company,* 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1st Dist. 1979); and *Murphy v. Allstate Insurance Company,* 17 Cal.3d 937, 132 Cal.Rptr. 424, 553 P.2d 584 (1976).")

708 A.2d at 108.

■ Since it has never been established that Nationwide is obligated to pay anything to anyone on behalf of its in-

sured, Raskin, for any losses under the policy, and Ms. Ferguson by her own assertion before the court is not "an insured" but in fact a stranger to the contract of insurance, she would at most be a remote "incidental beneficiary" and not an "intended beneficiary" of the insurance contract. Therefore, we find that the trial court properly granted summary judgment as to Ms. Ferguson's breach of contract claim against Nationwide.

## IV.

In her proposed amended complaint, Ms. Ferguson alleges that Raskin owed her a non-delegable duty of care to provide a reasonably safe work environment and that the duty was breached when Raskin provided Ms. Ferguson with the unreasonably dangerous and/or defective halogen floor lamp which was the cause of the fire on January 19, 2005. In order to establish a claim for negligence, one must prove: "(1) a duty of care owed by defendant to plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn.1996). In this case, Raskin argues that although it had a duty to provide a reasonably safe work environment, that duty was not absolute and under the circumstances, that duty was not breached. We agree.

The question of the duty which a defendant owes to a plaintiff is a question of law to be determined by the court. *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 428 (Tenn.1994). Duty of care is defined as "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for protection against unreasonable risks of harm." *McClung*, 937 S.W.2d at 894. Assuming that a duty is

owed to the plaintiff, the defendant breaches that duty when he or she fails to exercise reasonable care under the circumstances. *McCall v. Wilder*, 913 S.W.2d 150, 153–54 (Tenn.1995). Reasonable care "is to be estimated by the risk entailed through probable dangers attending the particular situation and is to be commensurate with the risk of injury." *Doe v. Linder Const. Co., Inc.*, 845 S.W.2d 173, 178 (Tenn.1992).

The risk involved is that which is foreseeable; a risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable. Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. *See Spivey v. St. Thomas Hospital*, 31 Tenn. App. 12, 211 S.W.2d 450, 456 (1948). "[T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury." *Tedder*, 728 S.W.2d at 348. Foreseeability must be determined as of the time of the acts or omissions claimed to be negligent.

*Linder Const. Co., Inc.*, 845 S.W.2d at 178.

There is no proof in the record that the halogen lamp located within the office of Ms. Ferguson was dangerous or defective nor any proof that the lamp was in fact the property of Raskin. There is no proof that Raskin placed loose papers on the wall in close proximity to the halogen lamp, but, in fact, all of the proof shows that such papers were attached to the wall by Ms. Ferguson. The report of Al Spenc-

er of Donan Engineering Co., Inc. Fire and Explosion Investigation provides no evidence of a dangerous or defective condition existing in the halogen floor lamp or of any action or non-action of Raskin which would constitute negligence. The report provides in relevant part:

A study of the electrical breaker panel shows two 20 Ampere breakers in the tripped setting. The legend shows these breakers protect receptacles but it is not specific to which receptacles in the apartment (Photograph 33).

A study of the halogen floor lamp and its associated electrical wiring fail to provide evidence of shoring, arcing or fire initiating failure. The lamp was removed from the fire scene and is currently stored at the Donan Engineering Co. Inc. facility in Nashville, Tennessee. If needed a more comprehensive examination of the light can be conducted at a later date (Photographs 34 through 36).

*CONCLUSIONS*

The origin of the fire is on the north center section of the wall of the office, at the approximate point where the top section of the lamp intersects the wall. The cause of the fire is papers attached to the wall were allowed to come into contact with the hot halogen bulb of the floor lamp.

Research reveals that a 300–watt halogen tube can reach temperatures in access [sic] of 850 degrees Fahrenheit. The remains of the halogen tube could not [be] found in the debris to determine the exact wattage and Ms. Ferguson did not know the size. A smaller wattage tube would still produce sufficient heat to ignite paper that was allowed to come into contact with it.

Applying the test under *Pittman, McClung* and *Doe v. Linder,* the amended complaint cites no factual basis for its conclusions relative to negligence on the part of Raskin. The trial court did not err in refusing to allow the amendment to the complaint.

CONCLUSIONS

1. If Ms. Ferguson is "an insured" under the Nationwide policy, she has no coverage of her personal property because of the exclusion provided in section B(k)(1).

2. If Section C(2)(a)(3) is applicable, she is not "an insured" under the terms of the policy.

3. If she is not "an insured" under the policy, she cannot maintain a direct action against Nationwide.

4. She is not a "intended third-party beneficiary" to the policy of insurance between Nationwide and Raskin.

5. There is neither factual allegation nor proof of negligence on the part of Raskin.

The judgment of the trial court is in all respects affirmed and costs of the cause are assessed to Appellant, Ms. Ferguson.