# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs November 21, 2007

## BART KINCADE v. JIFFY LUBE

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-004422-05    Kay S. Robilio, Judge

---

### No. W2007-00995-COA-R3-CV - Filed May 8, 2008

---

Appellant appeals the trial court's grant of Appellee's motion for involuntary dismissal. Appellant brought suit against Appellee under Tennessee Code Annotated § 24-5-111 for damage to his vehicle's engine allegedly caused by Appellee's negligent performance of an engine flush procedure. Following Plaintiff/Appellant's proof, the trial court granted an involuntary dismissal in favor of Defendant/Appellee. Appellant appeals. Finding no error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., joined, W. FRANK CRAWFORD, J., not participating.

Kevin A. Snider, Germantown, Tennessee, for the appellant, Bart Kincade.

L. Clayton Culpepper, Memphis, Tennessee, for the appellee, Jiffy Lube.

### OPINION

In February of 2005, Bart Kincade ("Appellant") purchased a 2000 Ford Excursion (the "Vehicle") over the internet. The Vehicle was sold "as is" and, according to the record, Mr. Kincade did not receive a record of the Vehicle's maintenance history, nor did he have the Vehicle inspected by a mechanic prior to purchase.

On or about April 28, 2005, Mr. Kincade took the Vehicle to Jiffy Lube ("Appellee") for an oil change. Mr. Kincade also opted to have an "engine flush" performed. This service involves flushing the engine with an oil-based product in order to clean the engine. According to the record, Jiffy Lube had performed the engine flush service on approximately 150,000 vehicles, without incident. After performing the service on Mr. Kincade's Vehicle, it would not start. Jiffy Lube paid for the Vehicle to be towed to Landers' Ford in Collierville. At Landers' Ford, the mechanics

determined that the cause of the Vehicle's failure was that the "timing chain" had "jumped." Mr. Kincade was informed that the Vehicle's engine would have to be replaced.

On May 27, 2005, Mr. Kincade filed suit against Jiffy Lube in the General Sessions Court of Shelby County, alleging that Jiffy Lube's engine flush procedure caused the damage to the Vehicle. Following a verdict for Jiffy Lube, Mr. Kincade appealed to the Circuit Court at Shelby County. On December 21, 2006, Jiffy Lube filed a "Motion for Sanctions for Spoliation or Non-Production of Evidence," alleging that, after losing in General Sessions Court, Mr. Kincade had replaced the Vehicle's engine, and disposed of the damaged engine before Jiffy Lube could have its mechanics examine same. The matter proceeded to trial on February 26, 2007, and the trial court granted an involuntary dismissal, pursuant to Tenn. R. Civ. P. 41.02, in favor of Jiffy Lube.[1] The "Order of Judgment" was entered on April 4, 2007.

Mr. Kincade appeals and raises two issues for review as stated in his brief:

I.      Whether the lower court had bias and predisposition against the Appellant, which entitle the Appellant to a new trial.

II.     Whether the trial court erred in directing [a] verdict for the Appellee when the Appellant carried its burden of establishing a statutory presumption of negligence, under T.C.A. §24-5-111, against the Appellee.

When a motion for involuntary dismissal is made at the conclusion of the plaintiff's proof in a bench trial, "the trial court must impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the evidence has been presented." *Building Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn.2007); *Thompson v. Hensley*, 136 S.W.3d 925, 929 (Tenn. Ct. App. 2003); *see also Burton v. Warren Farmers Coop.,* 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002). If a plaintiff has failed to demonstrate his or her right to relief by a preponderance of the evidence under the facts as found by the court and pursuant to the applicable law, then the case should be dismissed. *Building Materials Corp. v. Britt*, 211 S.W.3d at 711; *Burton v. Warren Farmers Coop.*, 129 S.W.3d at 520-21.

The standard of review of a trial court's decision to grant a Tenn. R. Civ. P. 41.02 involuntary dismissal is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure. *Building Materials Corp. v. Britt*, 211 S.W.3d at 711. This standard is appropriate because the trial court has used the same reasoning to dispose of the motion that it would have used to make a final decision at the close of all the evidence. *Burton v. Warren Farmers Coop.*, 129 S.W.3d at 521. Consequently, this Court must review the case *de novo* upon the record with a presumption of

---

[1] In the transcript of the hearing, Appellee's attorney moves the trial court for a "directed verdict." This was, of course, an improper motion because motions for directed verdicts have no place in bench trials. *See, e.g., Burton v. Warren Farmers Coop*., 129 S.W.3d 513, 520 (Tenn.Ct.App.2002). The proper motion would have been a motion for an involuntary dismissal at the conclusion of the plaintiff's proof in accordance with Tenn. R. Civ. P. 41.02. Accordingly, we will construe the trial court's order as if it were an order granting a Tenn. R. Civ. P. 41.02 dismissal.

correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm absent error of law. *See* Tenn. R. App. P. 13(d). Moreover, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997).

We first address Mr. Kincade's assertion that the trial judge demonstrated "bias and predisposition" against him. Before turning to the transcript, we note that, during the course of a trial, a judge must be patient, dignified, and courteous to lawyers and witnesses while, at the same time, ensuring that the matter is adjudicated promptly and efficiently.[2] The manner in which a judge chooses to balance these requirements is largely left to the judge's own discretion. From the record before us, we concede that Judge Robilio did interject questions and comments in an effort to move the proceedings along. However, we cannot go so far as to say that the record supports Appellant's contention that Judge Robilio "had made up [her] mind prior to hearing or seeing any evidence." Rather, Judge Robilio encourages the attorney's to focus on areas about which she is concerned, e.g., the fact that there was no prior record of the condition of this Vehicle at the time of purchase. When we take the comments as a whole, and read them in light of the entire transcript, we find no reversible error.

We now address whether the involuntary dismissal was properly granted. This suit is brought under Tennessee Code Annotated § 24-5-111, which reads, in relevant part, as follows:

> In all actions by a bailor against a bailee for loss or damage to personal property, proof by the bailor that the property was delivered to the bailee *in good condition* and that it was not returned or redelivered according to the contract, or that it was returned or redelivered in a damaged condition, shall constitute prima facie evidence that the bailee was negligent, *provided the loss or damage was not due to the inherent nature of the property bailed.*

Tenn. Code Ann. § 24-5-111 (2000)(emphasis added).

Under Tennessee Code Annotated § 24-5-111, the burden is on the plaintiff to establish, *inter alia*, that the property delivered to the bailee is in good condition. In the instant case, it is uncontested that Mr. Kincade drove the Vehicle to Jiffy Lube, and that the Vehicle was, in fact,

---

[2]See Rule 10, Supreme Court Rules. Canon 3(B)(4) states that "[a] judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity . . . ." This duty, however, is balanced against the duty imposed by Canon 3(B)(8), which is to "dispose of all judicial matters promptly, efficiently, and fairly."

running at that point. While the fact that a vehicle may be running does not, *ipso facto*, prove that the vehicle is operating "in good condition," we are willing to concede that Mr. Kincade met his burden on this one criterion. However, a plaintiff must also prove that the loss or damage complained of "was not due to the inherent nature of the property bailed." Here, Mr. Kincade's case begins to falter. There are no records of this Vehicle's history, nor any records of the actual condition of the Vehicle upon purchase, or at any time thereafter, until it arrived at Landers' Ford. Again, the fact that a Vehicle runs does not necessarily show that there are no inherent, or latent, defects in the mechanism. The question, then, becomes whether Mr. Kincade has satisfied his burden to show that there were, in fact, no existing problems, independent of the engine flush procedure, which could have caused the timing belt to malfunction. From the record, we know that the Vehicle was purchased, as is, over the internet, that it had over 100,000 miles on it at the time of the service, and that Mr. Kincade did not have the Vehicle inspected by his mechanic prior to, or after, the purchase. Furthermore, the only evidence in the record as to causation is that: (1) the cause of the engine failure cannot definitively be determined without dismantling the engine (we will discuss this further below), and (2) while Landers' Ford originally informed Jiffy Lube's regional manager, Sean Curtis, that "the vehicle lost oil pressure during the engine flush and [this] allowed the timing chain tensioner to lose pressure on the timing chain[]," further inspection "indicated that the tensioner on this engine is a ratcheting style tensioner." Consequently, as Landers' Ford informed Mr. Curtis:

> As a tensioner flexes out and gets the chain, it locks into position not allowing itself to retard and work independently of oil pressure. Secondly, the tensioner operated off of oil pressure, and every Ford motor of this same design would experience this problem at each service interval. During a regular oil change service, all vehicles experience a short period of no oil pressure during initial start up while the oil filter is being pressurized. Therefore, the fact that this vehicle jumped time is due to something other than a loss of oil pressure.

From the evidence before us, it appears that the loss of oil pressure (absent some other problem with the vehicle) could not have caused this particular type of timing belt to jump. Mr. Kincade's failure to provide any proof whatsoever to show that there were, in fact, no other problems with the Vehicle, is the demise of his case.

However, even if we assume, *arguendo* (which we do not), that Mr. Kincade has met his burden to establish a *prima facie* case for negligence under Tennessee Code Annotated § 24-5-111, we are left with the fact that the damaged engine is no longer available. Even if Mr. Kincade's evidence were sufficient to shift the burden to Jiffy Lube to prove that it was not negligent, the record suggests that the only way Jiffy Lube could make such a showing would be for it to have someone dismantle the engine. Because Mr. Kincade had the engine replaced during the course of these proceedings, and did not preserve the damaged engine, Jiffy Lube could not conduct such inquiries as would be necessary to support its case. The doctrine of spoliation of evidence permits a court to draw a negative inference against a party who has intentionally, and for an improper purpose, destroyed, mutilated, lost, altered, or concealed evidence. *Bronson v. Umphries*, 138

S.W.3d 844, 854 (Tenn. Ct. App. 2003); *Leatherwood v. Wadley*, 121 S.W.3d 682, 703 (Tenn. Ct. App. 2003); *Foley v. St. Thomas Hosp.*, 906 S.W.2d 448, 453-54 (Tenn. Ct. App. 1995). This inference is rebuttable and arises only when the spoliation occurs in circumstances indicating fraud and a desire to suppress the truth. It does not arise when the destruction was a matter of routine with no fraudulent intent. Under the facts in the record, we cannot go so far as to find that Mr. Kincade has acted fraudulently in not preserving the engine. Nonetheless, as noted above, the testimony indicates that the only way to determine what caused the malfunction is to dismantle the engine. Because Mr. Kincade testified that he does not know the present location of the engine, neither he nor Jiffy Lube can meet their respective burdens in this matter.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed to the Appellant, Bart Kincade, and his surety.

_____
DAVID R. FARMER, JUDGE