IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 30, 2012 Session

## U.S. WASTE ATLANTA, LLC and CLARENCE EMMER v. MARK ENGLUND and WILLIAM ENGLUND

**Appeal from the Chancery Court for Hamilton County**
**No. 07-0204     Donald Paul Harris, Senior Judge**

**No. E2010-01865-COA-R3-CV-FILED-APRIL 3, 2012**

This appeal arises from an alleged agreement concerning a waste collection business. In 2007, U.S. Waste Atlanta, LLC ("U.S. Waste Atlanta"), filed suit against Mark Englund and William Englund Sr. ("the Defendants")[1] in the Chancery Court for Hamilton County ("the Trial Court"), alleging that the Defendants improperly took possession of certain trucks. U.S. Waste Atlanta argued, among other things, that written documents demonstrated that William Englund Sr. had an agreement with Clarence Emmer[2], owner of U.S. Waste, LLC ("U.S. Waste"), to transfer trucks to U.S. Waste Atlanta in exchange for an interest in the company. Clarence Emmer, on behalf of U.S. Waste Atlanta, made finance payments on the trucks but the transfer never happened. The Plaintiffs filed a Motion for Summary Judgment. The Trial Court partially granted the Plaintiffs' Motion for Summary Judgment, awarding Clarence Emmer a judgment against William Englund Sr. for $36,073.90. The Trial Court also made this a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. William Englund Sr. appeals, arguing that a genuine issue of material fact regarding whether an agreement existed bars summary judgment. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

---

[1]Mark Englund, a defendant below, is not a party on appeal.

[2]Clarence Emmer was added as a plaintiff by the Trial Court's order granting U.S. Waste Atlanta's Motion to Amend Complaint to Add Additional Party. U.S. Waste Atlanta and Clarence Emmer are collectively "the Plaintiffs" herein.

Phillip C. Lawrence, Chattanooga, Tennessee, for the appellant, William Englund Sr.

C. Crews Townsend and Neil A. Brunetz, Chattanooga, Tennessee, for the appellees, U.S. Waste Atlanta, LLC and Clarence Joseph Emmer.

**OPINION**

**Background**

William Englund Sr. and his wife, Susan H. Englund, were the member-managers of Star Waste Services, LLC. Established in 2000, Star Waste Services, LLC operated a garbage collection service. Star Waste Services, LLC filed for bankruptcy in 2003.

Star Waste Disposal, LLC was formed by the Englunds in 2005 to carry on the garbage collection service in the Chattanooga area. Star Waste Services, LLC owned trucks and equipment which it leased to Star Waste Disposal, LLC. William Englund Sr.'s son, Mark Englund, except for a period in late 2006, was the 100% member-manager of Star Waste Disposal, LLC.

In early 2006, William Englund Sr. began discussions with Clarence Emmer, the owner of U.S. Waste, about forming a new waste management business, U.S. Waste Atlanta, which, as the name suggests, would operate in Atlanta, Georgia. The Plaintiffs assert that in August 2006, William Englund Sr. agreed in writing to transfer to the new company, U.S. Waste Atlanta, three trucks in exchange for an interest in the new company.

Clarence Emmer opened an account with the City of Chattanooga in order to dump garbage. Clarence Emmer used U.S. Waste's employees and the trucks to collect garbage for Star Waste Disposal, LLC. Clarence Emmer also unsuccessfully attempted to collect money from Star Waste Disposal, LLC customers. Clarence Emmer made payments on the trucks to Financial Federal Credit in the sum of around $36,073. The trucks were owned by Star Waste Services, LLC and had been financed through Financial Federal Credit. By late 2006, the business enterprise was deteriorating. U.S. Waste Atlanta, the parties' proposed mutual endeavor, was registered with the state of Georgia in November 2006. The trucks, however, never were transferred to U.S. Waste Atlanta. Emmer stopped making payments on the trucks. In March 2007, U.S. Waste Atlanta sued William Englund Sr. and Mark Englund, and Clarence Emmer was added later as a Plaintiff.

In March 2007, the Trial Court conducted a hearing concerning the requested injunction and writ of possession. At this hearing, three controversial documents were

entered as exhibits. The first document, a single page dated August 23, 2006, was handwritten but with computer generated signature lines. According to this document, the Defendants were to transfer over 90 roll-off containers in exchange for a 20% interest in U.S. Waste Atlanta. The second document, a typed single page dated August 25, 2006 and purportedly signed by William Englund Sr., stated that U.S. Waste Atlanta would purchase three trucks belonging to "Star Waste Services." The third document, a typed single page dated August 25, 2006, stated that Mark Englund would turn over all assets of Star Waste Disposal, LLC and work for U.S. Waste Atlanta in exchange for a 10% share in U.S.Waste Atlanta.

William Englund Sr. first testified that he never signed the documents. William Englund Sr. testified:

Q: Thank you. Now, sir, I'm going to hand you what's been marked as Exhibit 1 and I'm going to ask you again, and I'm going to remind you that you're under oath, and I want you to tell me whether that is your signature at the bottom of that page?

A: That is not my signature. I never signed that document.

Q: You're saying somebody forged your signature right there?

A: Well, I just gave you an answer that is not my signature. I never signed that document.

Q: Now let me ask you about Exhibit 2 and remind you that you're under oath, too, and ask you if that is your signature at the bottom of that document?

A: That is not my signature. I never signed that document.

* * *

Q: You've seen Exhibit 1 and Exhibit 2 where basically he would agree - - well, especially Exhibit 2 where he would agree to pay $65,000 for your trucks to be paid in the increments that - - not quite on those checks and everything. Was that the agreement that those were talking about?

A: No. I mean, there is no agreement at all. That was an insurance

-3-

document for insurance information with the VIN numbers and the value you had to have for collateral insurance. That didn't represent anything. And the document you're referring to where he claimed that he was making payments based on $7,200 for trucks is not consistent with the information that he has here as five loans. And that is conducive with our conversation that he had, well, this is a personal loan and we'll do it this way. When the company is organized and we get our money, I was in total agreement that he would take it right off the top. Otherwise, he said, I'm holding you personally responsible. And he was very emphatic about that.

Q:     So you did have an agreement to go in business with him?

A.     We had an agreement verbally that we wanted to go in business together.

Regarding whether the fact that Clarence Emmer paid insurance on the trucks constituted evidence of an agreement, William Englund Sr. testified:

Q:     You're exactly right. His paying the insurance is evidence of an agreement. His paying over $35,000, that's evidence of an agreement.

A:     Right.

Clarence Emmer testified to the alleged agreement:

Q:     But the thing is, you and the Englunds were planning on going into business together, correct?

A:     We went in business together. Mr. Englund stated himself that if we didn't do something that he was finished, that their trucks were all going to be repossessed and everything.

Q:     And according to this, you were supposed to pay 65,000. You haven't paid 65,000, have you? You haven't even fulfilled this part of the contract?

A:     I stopped paying when they grabbed the trucks.

Q:     So you stopped paying. So you didn't even fulfill your portion of the

-4-

contract, the 65,000, and so there's not been any agreement because you never fulfilled your part of the contract?

A:     I fulfilled all my parts.  They haven't fulfilled theirs.

After the injunction hearing, William Englund Sr. filed a Motion for Summary Judgment in which the Defendants' account of the signatures on the three documents shifted. The testimony at the injuction hearing was that the signatures were not theirs.  As related to his Motion for Summary Judgment, William Englund Sr. alleged that, while the signatures were genuine, the documents were fraudulently produced.  In February 2010, the Plaintiffs filed their own Motion for Summary Judgment.

In August 2010, the Trial Court entered an order granting partial summary judgment awarding Clarence Emmer a judgment of $36,073.90 against William Englund Sr. The Trial Court, in its July 2010 memorandum opinion incorporated into the final judgment, stated:

This case is before the court on a motion for summary judgment filed by plaintiffs, US Waste Atlanta, LLC, and Clarence Emmer.  After due consideration the court is of the opinion that a partial summary judgment should be granted, there being no genuine dispute with regard to the following issues:

1.  In August 2006, an agreement was formed between William Englund Sr. and Clarence Joseph Emmer to form a business relationship related to operating a garbage service in the Atlanta, Georgia, area.

2.  As part of that agreement, William Englund Sr. agreed to cause the transfer of title to three garbage hauling trucks, a 2002 Freightliner VIN IFVABPAK32HK41664a 2000 Mack VIN IM2P67C5YM053238 and a 1999 Mack VIN IM2P67C3XM0416673622363JDOC, to the business relationship.

3.  Based upon the agreement of William Englund Sr., Clarence Emmer paid $36,073.90 to Financial Federal Credit on the indebtedness owed on those vehicles.

4.  The defendant, William Englund Sr., failed to cause a transfer of title to the trucks to the business in breach of the agreement between the parties.

5. Plaintiff, Clarence Emmer, is entitled to a judgment against William Englund Sr. in the amount of $36,073.90.

Summary judgment is denied with respect to all other issues. Counsel for plaintiffs will prepare an appropriate order.

The Trial Court also stated in its August 2010 order that this order constituted a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, while acknowledging that certain other matters, such as judicial dissolution of the plaintiff LLC, remained outstanding. William Englund Sr. appeals.

## **Discussion**

We restate the issues on appeal as one overarching issue: whether the Trial Court erred in partially granting the Plaintiffs' Motion for Summary Judgment.

Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not

-6-

apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

Initially, we note that William Englund Sr. never filed a response to the Plaintiffs' Motion for Summary Judgment. Mark Englund filed a response pro se wherein he, among other things, denied having entered into an agreement with the Plaintiffs and asserted that the purported written contracts were fraudulent.

The parties vigorously dispute the status of the three written documents which purport to show an agreement. The Plaintiffs argue that because William Englund Sr. testified at the injunction hearing that his signatures were not on the documents but later changed his testimony by saying they were his signatures but the rest of the three documents were fraudulently produced, the Cancellation Rule should apply to cancel these apparently contrasting assertions.

Absent an explanation or corroboration, contradictory statements by a witness concerning the same fact cancel each other. *Taylor v. Nashville Banner Pub. Co.*, 573 S.W.2d 476, 482-83 (Tenn. Ct. App. 1978). In the instant case, reviewing all the evidence and inferences in the light most favorable to William Englund Sr., as we must at this summary judgment stage of the proceedings, we find that William Englund Sr.'s later account regarding the signatures is not directly contradictory to his first as he gives an explanation for the changed testimony. Basically, it was William Englund Sr.'s position at the time the summary judgment was granted that he had signed blank sheets of paper upon which someone else later must have added the supposed contractual terms and agreement. We cannot say at this summary judgment stage that this explanation for the change in his

testimony is not credible as such a credibility determination is not appropriate at the summary judgment stage. The Cancellation Rule, therefore, does not apply to this issue at this stage of the proceedings.

The Trial Court did not specify exactly what basis it relied upon to find the existence of an agreement. Due to the dispute over whether William Englund Sr. signed these purported written agreements or signed only blank sheets of paper, the Trial Court could not properly have granted partial summary judgment based on the purported written agreements. For this same reason, we cannot affirm the Trial Court's granting of partial summary judgment on the basis of the purported written agreements.

Nevertheless, there is another basis under which the Trial Court could and may have properly granted partial summary judgment by having found an oral agreement between Clarence Emmer and William Englund Sr. We have previously addressed the concept of contracts implied in fact:

> Tennessee has long recognized that a contract can be express, implied, written or oral. *Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002). A contract "implied in fact" is one that "arises under circumstances which show mutual intent or assent to contract." *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997); *see also Givens v. Mullikin*, 75 S.W.3d 383, 407 (Tenn. 2002). A contract may be implied from the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract. *Thompson v. Hensley*, 136 S.W.3d 925, 930 (Tenn. Ct. App. 2003).

*Metro. Gov't of Nashville & Davidson Cnty. v. Cigna Healthcare of Tenn., Inc.*, 195 S.W.3d 28, 34 (Tenn. Ct. App. 2005).

The record contains a number of salient undisputed facts regarding the parties' conduct with respect to one another. William Englund Sr. and Clarence Emmer began discussions about a business relationship in early 2006. Clarence Emmer used his company's employees to collect garbage from Star Waste Disposal, LLC's customers. Significantly, it is undisputed that Clarence Emmer made payments to Financial Federal Credit on the trucks owned by Star Waste Services, LLC.

On appeal, William Englund Sr. argues that, apart from an agreement with Clarence Emmer to continue discussions toward reaching an agreement, he never had an agreement with Clarence Emmer. William Englund Sr. states in his brief that: "[William Englund Sr.] also testified that he did not agree to transfer the Trucks, and certainly not free

-8-

of the liens as alleged." However, for the purposes of a contract implied in fact, we are fundamentally concerned with the conduct of the parties. As the Plaintiffs put it, "Emmer did not pay $36,073.90 to Financial Federal Credit as an idle gesture." William Englund Sr. himself testified, as discussed earlier in this Opinion, that Clarence Emmer's paying the insurance on the trucks and then paying over an additional $35,000 to Financial Federal Credit was evidence of their agreement.

Finally, for purposes of summary judgment, we do not regard the dispute concerning whether an agreement existed to be a dispute over a genuine issue of material fact. Given the undisputed material facts, whether an agreement existed is a question of law. Based on the record before us, including the undisputed material facts concerning the parties' conduct, we conclude that the parties on appeal had a contract implied in fact. We affirm the judgment of the Trial Court.

## **Conclusion**

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, William Englund Sr., and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE