Tamarin LINDENBERG, individually and as Natural Guardian of her minor child S.M.L. and Zachary Lindenberg, Plaintiffs,

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY, Defendant.**

No. 2:13–cv–02657–JPM–cgc.

United States District Court, W.D. Tennessee, Western Division.

Signed Dec. 11, 2014.

Molly A. Glover, Charles Silvestri Higgins, Burch Porter & Johnson PLLC, Memphis, TN, for Plaintiffs.

Daniel Warren Van Horn, Michael C. McLaren, Robert Campbell Hillyer, Butler Snow LLP, Memphis, TN, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JON P. McCALLA, District Judge.

Before the Court is Defendant Jackson National Life Insurance Company's Motion for summary judgment, filed October 15, 2014. (ECF No. 87.) For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Factual Background

Plaintiffs are residents of Shelby County, Tennessee. (Compl. ¶ 1, ECF No. 1–1.) Plaintiff Tamarin Lindenberg is the former wife of Decedent Thomas A. Lindenberg. (*Id.* ¶ 5.) Plaintiffs Zachary Thomas Lindenberg and SML are children of Plaintiff Tamarin Lindenberg and Decedent. (*See id.* ¶ 3, 6.) Defendant Jackson National Life Insurance Company is "a foreign corporation duly organized and existing under the laws of Michigan, and authorized by the Tennessee's Commissioner of Insurance to engage in the business of writing and selling life insurance in this state." (*Id.* ¶ 2.)

Defendant issued a life insurance policy (hereinafter "Policy") to Decedent effective January 23, 2002, which was renewable to the age of 95. (*Id.* ¶ 4.) The Policy insured Decedent's life in the sum of $350,000 and designated Tamarin Lindenberg as the primary beneficiary. (*Id.*) The Policy stated in relevant part:

> THE COMPANY WILL PAY the face amount shown in the policy specifications, less any premium due, to the designated beneficiary upon proof of the Insured's death and not later than two months after the receipt of such proof.

(*Id.*)

Tamarin Lindenberg and Decedent divorced in 2005 in Shelby County, Tennessee. (*Id.* ¶ 5.) Tamarin Lindenberg remained the primary beneficiary after the divorce; however, the Marital Dissolution Agreement (MDA) required that "Wife shall pay for the life insurance premium for Columbus and Jackson National policies for so long as she is able to do so and

still support the parties' children." (*Id.* ¶¶ 5–6.) Additionally, the MDA required "Husband [to] maintain[ ] 'at his expense' a policy insuring his life in the amount of $450,000 and naming the parties' children" as "irrevocable primary beneficiaries." (*Id.* ¶ 6.)

Decedent died on January 22, 2013. (*Id.* ¶ 7.) Leading up to his death, Decedent was disabled and living with Plaintiffs. (*Id.* ¶ 8.) Decedent had difficulty earning enough income to provide for himself and his children. (*Id.*) According to Plaintiffs, "[Tamarin Lindenberg] had long provided for him following their divorce and continued to provide for him until his death." (*Id.*)

The parties do not dispute that premiums for the Policy were duly paid. (Answer ¶ 9, ECF No. 4.) Insurance forms and the MDA were "sent to Defendant on February 2, 2013 via express mail, next day delivery." (Compl. ¶ 10.) On March 11, 2013, Plaintiffs sent Defendant a demand letter explaining the immediate need for funds. (*Id.* ¶ 11.) On March 22, 2013, Defendant sent Plaintiffs a letter stating there was "insufficient basis to pay the claim." (*Id.* ¶ 13 (internal quotation marks omitted).) The letter required further action by Plaintiffs:

1. "[W]aivers to be signed by other potential parties in this matter"; ·

2. Plaintiff to "obtain court-appointed Guardian(s) for the Estates of the two minor children. The Guardians cannot be Tamarin Lindenberg[.]" ["]The Guardians will need to sign waivers for the minor children[;]" and ·

3. "[A] waiver to be signed by Mr. Lindenberg's other children. We know of one other child, Mary A. Lindenberg. Jackson may also require an affidavit indicating that Mr. Lindenberg has no other children."

(*Id.* ¶ 13.) Defendant also required "a written waiver from Plaintiff Tamarin Lindenberg before it would tender any funds." (*Id.* ¶ 14.)

Plaintiffs subsequently filed suit to recover the death benefit and other damages. (ECF No. 1–1.) At the time of filing of the complaint, Defendant had not yet paid benefits to Plaintiffs. (*Id.* ¶¶ 10 & 12.)

Plaintiffs alleged that "[d]espite [Tamarin Lindenberg's] repeated requests · Defendant has failed to send Plaintiff documents she has requested that Defendant claims it must have before payment is made on the policy." (*Id.* ¶ 14.) Tamarin Lindenberg also communicated to Defendant that "she was in New Jersey and could not leave her children to establish guardianships in Tennessee." (*Id.*)

Defendant responded that Defendant had not paid the death benefit to Plaintiffs at the time the Complaint was filed, "because there [were] competing and/or potentially competing claims to the death benefit." (Answer ¶ 13, ECF No. 4.) Defendant further asserted "that because Plaintiff would not commit to a course of action, appropriate waivers could not be drafted or provided." (*Id.* ¶ 14.)

On May 19, 2014, the Court ordered payment of the death benefit to Tamarin Lindenberg. (ECF No. 32.) Defendant subsequently complied with the order and disbursed payment to Tamarin Lindenberg. (ECF No. 84–1 at PageID 560.)

**B. Procedural Background**

On July 19, 2013, Plaintiffs filed their Complaint in the Circuit Court of Shelby County Tennessee for the Thirteenth Judicial District at Memphis. (ECF No. 1–1.) On August 23, 2013, Defendant removed the case to the United States District Court for the Western District of Tennes-

see pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (ECF No. 1 at 1.)

On August 30, 2013, Defendant filed an Answer to the Complaint. (ECF No. 4.) Defendant included in the filing a Third-Party Complaint for Interpleader against Mary Angela Lindenberg and a Counterclaim against Tamarin Lindenberg. (*Id.* at 5–8.) With regards to Defendant's Counterclaim and Third–Party Complaint, Defendant asserted it "[was] not in a position to determine, factually or legally, who is entitled to the Death Benefit," and requested the Court to "determine to whom said benefits should be paid." (*Id.* at 7.) On September 23, 2013, Plaintiff Tamarin Lindenberg and Third–Party Defendant Mary Angela Lindenberg Williams filed a Motion to Dismiss Defendant Jackson National Life Insurance Company's Counterclaim and Third–Party Complaint for Interpleader. (ECF No. 9.) On December 9, 2013, the parties filed a Joint Motion to Appoint James and Kimberly Griffith as Guardian Ad Litems (ECF No. 19), which was subsequently granted by the Court (ECF No. 20).

On May 19, 2014, the Court granted Plaintiff Tamarin Lindenberg's and Third–Party Defendant Mary Angela Lindenberg Williams' Motion to Dismiss. (ECF No. 32.) The Court further ordered Defendant "to disburse life insurance policy benefits to Plaintiff in the amount of $350,000 with interest from January 23, 2013, until the date of payment." (*Id.* at 17.)

On August 21, 2014, Defendant filed a Motion to Dismiss Plaintiffs' Claims for Punitive Damages and Common Law Bad Faith. (ECF No. 46.) Plaintiffs timely responded in opposition on September 17, 2014. (ECF No. 67.) Defendant filed a Reply on September 26, 2014. (ECF No. 13.) The Court held a telephonic hearing on the Motion to Dismiss on November 25, 2014, at which both parties were represented. (ECF No. 101.) On the same date, the Court entered an Order Granting in Part Defendant's Motion to Dismiss Plaintiffs' Claims for Punitive Damages and Common Law Bad Faith. (ECF No. 102.) In the Order, the Court dismissed Plaintiffs' common law bad faith claim. (*Id.*) On December 9, 2014, the Court issued a second Order regarding Defendant's Motion to Dismiss, which denied Defendant's motion to dismiss claims for punitive damages. (ECF No. 124.)

On October 15, 2014, Defendant filed a Motion for Summary Judgment. (ECF No. 87.) Plaintiffs responded in opposition on November 17, 2014. (ECF No. 93.) Defendant filed a reply to Plaintiffs' response on November 21, 2014. (ECF No. 99.)

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Chapman v. UAW Local 1005,* 670 F.3d 677, 680 (6th Cir.2012). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't,* 687 F.3d 771, 776 (6th Cir.2012) (citing *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984)). "A dispute over material facts is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Chapman,* 670 F.3d at 680 (cit-

ing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Kalich v. AT & T Mobility, LLC,* 679 F.3d 464, 469 (6th Cir.2012).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt,* 679 F.3d 443, 448 (6th Cir.2012) (citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Id.* at 448–49 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(e)).

"To show that a fact is, or is not, genuinely disputed, both parties are required to either 'cite[ ] to particular parts of materials in the record' or 'show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Bruederle,* 687 F.3d at 776 (alterations in original) (quoting Fed.R.Civ.P. 56(c)(1)); *see also Mosholder,* 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548)).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3); *see also Emerson v. Novartis Pharm. Corp.,* 446 Fed.Appx. 733, 736 (6th Cir. 2011) (" '[J]udges are not like pigs, hunting for truffles' that might be buried in the record." (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991))); *Chi. Title Ins. Corp. v. Magnuson,* 487 F.3d 985, 995 (6th Cir.2007) ("A district court is not required to 'search the entire record to establish that it is bereft of a genuine issue

of material fact.'" (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989))).

"In considering a motion for summary judgment, [a court] must draw all reasonable inferences in favor of the nonmoving party." *Phelps v. State Farm Mut. Auto. Ins. Co.,* 736 F.3d 697, 703–04 (6th Cir. 2012) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard,* 692 F.3d 523, 529 (6th Cir.2012) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505).

## III. ANALYSIS

Defendant Jackson National Life Insurance Company moves for entry of summary judgment in their favor as to Plaintiffs' claims for statutory bad faith and punitive damages. (ECF No. 87 at 1.) Defendant further seeks dismissal of claims by Zachary Lindenberg and Sophie Lindenberg for breach of contract and statutory bad faith as a matter of law. (*Id.* at 1–2.)

### A. Statutory Bad Faith

Under the Tennessee Bad Faith Statute, insurers may be liable for bad faith when "a loss occurs and [the insurers] refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy." Tenn.Code Ann. § 56–7–105(a). "[A] sum not exceeding twenty-five percent (25%) on the liability for the

loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith...." *Id.* A Plaintiff seeking recovery under the Bad Faith Statute must also show that "failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy," and the additional liability is "measured by the additional expense, loss, and injury including attorney fees thus entailed." *Id.*

■ To prevail on a claim for statutory bad faith, the Plaintiff must show:

(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith.

*Palmer v. Nationwide Mut. Fire Ins. Co.,* 723 S.W.2d 124, 126 (Tenn.Ct.App.1986).

The parties do not dispute that Plaintiffs provided a demand letter to Defendant on March 11, 2013. (*See* ECF No. 93–1 ¶ 12.) It is further undisputed that Defendant issued payment of the death benefit to Tamarin Lindenberg on May 19, 2014— more than two months after the demand letter was sent. (*See* ECF No. 84–1 at PageID 560.) Defendant also does not directly contend that the Policy had not become "due and payable." (See ECF Nos. 87–88.) Accordingly, the only issue for the Court to decide is whether Plaintiffs' evidence that Defendant's refusal to pay was not in good faith is sufficient to overcome a summary judgment challenge.

Defendant argues it is entitled to summary judgment because "Plaintiffs cannot establish, as they must, that Jackson lacked a legitimate basis for its decision to withhold payment." (ECF No. 88 at 3.) In support of this argument Defendant asserts the following: 1) "Given the ambigui-

ties present in the MDA, Jackson held a legitimate and substantial basis for not immediately disbursing the proceeds to Ms. Lindenberg" (*id.* at 6); 2) "Jackson held a legitimate and substantial basis for not conducting a thorough review of Tennessee law prior to its decision to withhold payment" (*id.* at 8); and 3) "Jackson held a sufficient and legitimate basis for its refusal to provide waivers to Ms. Lindenberg" (*id.* at 11).

### 1. Effect of the Marital Dissolution Agreement

Defendant does not dispute that Tamarin Lindenberg was at all times "the primary designated beneficiary" of the Policy. (Answer ¶ 5, ECF No. 4.) Instead, Defendant argues that ambiguity in the MDA led to the possibility of multiple liabilities on the Policy. (See ECF No. 88 at 6.) According to Defendant, Defendant's actions were "motivated by its desire to ... ensure that each of the potential claimants' rights to the proceeds were being sufficiently protected...." (*Id.*)

Defendant further asserts that the MDA failed to "identify any of the policies referenced in the MDA by policy number or date of issuance" to the effect that Defendant "could not ascertain whether the 'Jackson National policy' referenced on page 7 of the MDA referred to the Policy at issue here, the separate Jackson policy held by Ms. Lindenberg, or the smaller Jackson policy held by Mr. Lindenberg." (*Id.*)

Plaintiffs argue that despite the availability of evidence to the contrary, Defendant "took the unequivocal position that the MDA was ambiguous and did nothing further to fulfill its obligations under the contract except to place unreasonable requirements on Ms. Lindenberg, who it contended had absolutely waived her right to the death benefit in the waiver provision of the MDA." (ECF No. 93 at 4.) Plaintiffs further argue that the Court has already

determined that "the MDA was not ambiguous and that Ms. Lindenberg had not waived her rights to the subject Policy." (ECF No. 93 at 3 (citing ECF No. 32).) According to Plaintiffs, Plaintiffs have submitted sufficient factual evidence that the MDA was not ambiguous in the form of testimony by Tom Maschmeyer and "undisputed expert testimony that the waiver provision of the MDA did not operate to waive Ms. Lindenberg's rights to the subject Policy." (Id.) Additionally, Plaintiffs claim to have provided evidence that "Defendant refused to consider information from the agent who procured the subject Policy, Wade Frederick...." (Id.) Plaintiffs also assert that "[i]f any of Defendant's stated bases for refusing to pay Ms. Lindenberg were 'well-reasoned', Defendant had two months from the date of Ms. Lindenberg's submission of proof of Mr. Lindenberg's death to conduct an investigation in order and pay the rightful beneficiary or otherwise interplead the funds to the Court." (Id. at 2.)

The Court finds the MDA is not ambiguous with regards to the insurance policies. The MDA states explicitly that "Husband at his expense shall maintain in full force insurance on his life having death benefits payable to the parties' children as irrevocable primary beneficiaries in the sum of $450,000.00 until the youngest child reaches the age of twenty-two (22)." (ECF No. 1–1 at PageID 35.) Because the policy on which Plaintiffs have sought enforcement in the present case did not list the parties' children as a beneficiary, the Court finds that this policy did not fall within the "Life Insurance" section of the MDA, which only required coverage for the parties' children. (See id.; see also ECF No. 32 at 12–13.) Accordingly, the Court finds that there was only one reasonable interpretation of the requirements under the "Life Insurance" section related to Mr. Lindenberg's life insurance, which was that he was required to maintain $450,000 of coverage for the children of Mr. Lindenberg and Tamarin Lindenberg. The Policy at issue in the present case could not reasonably be interpreted to fall within the scope of this provision.

The Court recognizes, however, that an open question of whether Mr. Lindenberg complied fully with the terms of the MDA existed at the time the Policy became due. In this regard, Defendant's cited case law is enlightening. In *Holt v. Holt*, the Tennessee Supreme Court held that where a divorce decree establishes a requisite level of life insurance coverage for a particular beneficiary, that beneficiary possesses "a vested right to any life insurance policy obtained by the Decedent that satisfies the mandate in the decree." 995 S.W.2d 68, 77 (Tenn.1999). Consequently, an insurer may be open to multiple liabilities on a certain life insurance policy if the decedent's other policies fall short of what is required in the divorce decree or marital dissolution agreement.

The question of whether Defendant, having limited knowledge of Mr. Lindenberg's other policies, acted in good faith in withholding the death benefit from Tamarin Lindenberg, however, is a question for the jury. It is possible that Defendant's decision to require independent guardians for the children and waivers from all of Mr. Lindenberg's children was made in good faith. It is also possible that Defendant's withholding of the death benefit and imposition of extra procedural hurdles were unnecessary and amounted to breach of contract and bad faith. For example, the trier of fact may find that a request for review of Mr. Lindenberg's other existing policies would have been sufficient to conclude Defendant was not at risk of multiple liabilities, and therefore, the additional requirements placed on Plaintiffs were unwarranted.

The Court also finds that the MDA did not establish any rights to any insurance

benefit for Mr. Lindenberg's adult child Mary Angela Lindenberg. Accordingly, whether Defendant's requirement for a waiver of Mary Angela Lindenberg's rights amounted to breach of contract and bad faith is a question for the jury.

Regarding the reference to certain life insurance policies in the "Debts" section of the MDA, Defendant's arguments also fail. In that section, the MDA required, "Wife shall pay for the Life Insurance premium for the Columbus and Jackson National policies for so long as she is able'to do so and still support the parties [sic] children." (ECF No. 1–1 at PageID 34.) This section of the MDA relates to the parties' responsibilities for paying insurance premiums. It does not relate to which persons were the rightful beneficiaries of the insurance policies. Because there is no dispute that the Policy's premiums were duly paid, reference to this section of the MDA is of limited relevance to whether Tamarin Lindenberg was the rightful beneficiary of the instant Policy. Accordingly, Defendant's assertion that reference to insurance policies in the "Debts" section of the MDA is ambiguous because it fails to specify each policy "by policy number or date of issuance," is not a sufficient basis for dismissal of Plaintiffs' claims for bad faith on summary judgment.

### 2. Defendant's basis for not conducting a thorough review of Tennessee law prior to its decision to withhold payment

Defendant argues that "because Jackson could not ascertain which state law would govern the effect of the MDA on the Policy designation, the options set forth in its March 22nd letter were based on general common law principles that would have arguably entitled Jackson to disburse the proceeds regardless of the controlling law." (ECF No. 88 at 9.) According to Defendant, several uncertainties prevented Defendant from "unequivocally determin[ing] which state's law would govern the MDA's impact on the Policy designation...." (*Id.* at 9–10.) Those uncertainties included the Lindenbergs' location of residence at Mr. Lindenberg's death, the fact that Mr. Lindenberg signed the application in Indiana, and the Policy was issued in Indiana. (*Id.* at 10.) Defendant asserts that these uncertainties justified presenting Tamarin Lindenberg "50–state perspective of the procedures that might be necessary to accomplish Jackson's goals of (1) ensuring that the potential claimants' rights were being sufficiently protected; and (2) protecting itself from being exposed to multiple liabilities on the Policy." (ECF No. 88 at 10 (internal quotation marks omitted).) Defendant argues that "because the laws in New Jersey and Tennessee conflict on whether or not a divorce decree impacts an ex-spouse's beneficiary designation under a life insurance policy, Jackson's application of the incorrect law could have potentially subjected it to further liabilities." (*Id.* at 11.) Responding to the argument that Defendant should have known of the Tennessee Supreme Court's opinion in *Bowers v. Bowers*, 637 S.W.2d 456 (Tenn.1982), Defendant concludes, "Jackson's unfamiliarity with *Bowers* was not indicative of its statutory bad faith because, even if Jackson was aware of *Bowers* in March of 2013, it still would have provided the same recommendations that were set forth in the March 22nd letter." (ECF No. 88 at 11.)

Plaintiffs argue that Defendant's "position that it was confused over which state's law applied is pretextual." (ECF No. 93. at 4.) According to Plaintiffs, "Under any test applied, Tennessee law clearly governs the interpretation of the subject Policy." (*Id.*) In support of this argument, Plaintiffs cite to Tenn.Code Ann. § 56–7–102, which states in relevant part:

> Every policy of insurance issued to or for the benefit of any citizen or resident

of this state on or after July 1, 1907, by any insurance company or association doing business in this state ... shall contain the entire contract of insurance between the parties to the contract, and every contract so issued shall be held as made in this state and construed solely according to the laws of this state.

In this regard, Plaintiffs argue that "Ms. Lindenberg and Mr. Lindenberg at all relevant times were residents and citizens of the [S]tate of Tennessee." (ECF No. 93 at 4.) Plaintiffs also assert that "Ms. Lindenberg always maintained her residence at 611 Duck Call Cove, Memphis, Tennessee," and Mr. Lindenberg's death certificate "stated his residence as 611 Duck Call Cove, Memphis, Tennessee." (*Id.* at 5.)

Additionally, Plaintiffs argue that the doctrine of Lex Loci Contractus requires the application of Tennessee law because "both the Lindenbergs were at all times residents of Tennessee and the subject policies were negotiated, delivered, and paid for in the State of Tennessee." (*Id.*) Plaintiffs also dispute Defendant's assertion that Mr. Lindenberg signed the Policy in Indiana, stating that "[t]he testimony attributed to Tamarin Lindenberg in Defendant's Statement of Undisputed facts makes clear that the application was signed by Wade Frederick, the agent, in Fort Wayne, Indiana, not Thomas Lindenberg. (*Id.* at 5–6 n. 4.) Finally, Plaintiffs assert that a "most significant relationships" analysis also supports a finding that Tennessee state law governed the policy.

Plaintiffs further argue that Defendant waived its right to raise the issue of which state law applied because "[a]t no time in any written or oral correspondence did JNL advise Ms. Lindenberg or her legal representatives it was confused over the applicable state law," including in the March 22, 2013 denial letter. (*Id.* at 6.) Plaintiffs assert that "at no time during the handling of the claim did JNL inquire about the terms of her employment contract with her former employer." (*Id.* at 7.) According to Plaintiffs, this fact was learned only after litigation began. (*Id.*) Plaintiffs also assert that Defendant sent mail to Tamarin Lindenberg's Memphis, Tennessee address and never advised Tamarin Lindenberg of the confusion over application of Tennessee law as required by the Policy. (*Id.*) Plaintiffs further argue that Defendant had not previously raised the issue of confusion over conflict of laws in these proceedings, including when it paid the death benefit pursuant to court order. (*Id.* at 6–7.)

Similar to the issue of whether Defendant's actions in response to perceived ambiguity of the MDA amounted to breach of contract and statutory bad faith, the issue of whether Defendant's failure to conduct a thorough review of Tennessee case law, and instead, adopt a 50–state approach amounts to breach of contract and statutory bad faith is a factual question for the jury to determine. Plaintiffs have provided sufficient evidence to create a genuine issue of material fact on this issue. Plaintiffs' evidence that they have always maintained residence in Tennessee; that Defendant in fact used Plaintiffs' Tennessee mailing address for correspondence; that Mr. Lindenberg signed the Policy in Tennessee, not in Indiana; that Defendant failed to inquire about her position in New Jersey; and Defendant's failure to inform Tamarin Lindenberg of the confusion regarding her place of residence provides a sufficient factual basis for a reasonable jury to find that Defendant's actions amounted to breach of contract and statutory bad faith.

### 3. Defendant's basis for failing to provide waivers to Tamarin Lindenberg

Plaintiffs have claimed that Defendant acted in bad faith in part because Defen-

dant agreed to send a waiver for Mary Angela Lindenberg, but failed to do so. (*See* Compl. ¶ 10, ECF No. 1–1.) Defendant argues that there was a well-reasoned basis for its failure to provide waivers to Plaintiffs; namely, that "[Defendant] had to know how Ms. Lindenberg wanted the proceeds to be paid because that information would necessarily be included in the waiver...." (ECF No. 88 at 11.) According to Defendant, "Ms. Lindenberg never provided Jackson with a definitive answer on which option she wished to pursue" despite being informed by Defendant multiple times that Defendant needed the information before drafting a waiver. (*Id.* at 12.) Defendants further assert that "between May 9, 2013 and June 7, 2013, Ms. Lindenberg submitted numerous requests to Jackson to not interplead the funds and indicated on multiple times that she had not made up her mind as to how she wished to proceed." (*Id.*) Defendant concludes that "Ms. Lindenberg's inability to obtain waivers from Jackson largely resulted from her own indecisiveness...." (*Id.*)

Plaintiffs reject the argument that the information sought by Defendant from Tamarin Lindenberg was required for the waivers. (ECF No. 93 at 8.) Plaintiffs assert that Defendant "stated either [Tamarin Lindenberg] had waived her rights to the death benefit in the MDA or the MDA expressly gave the benefits to the minor children, not her." (*Id.* (citing ECF No. 85–1 ¶ 31, 32, 43).) Further, Plaintiffs assert that "Ms. Trumpie determined Ms. Lindenberg was not the rightful beneficiary." (*Id.* (citing ECF No. 85–1 ¶ 43).) Plaintiffs also allege that Nate Maas failed to provide the waivers "because he was simply behind in his work." (*Id.* (citing Exhibit 4, Dep. Maschmeyer; 44:10–15).)

Furthermore, Plaintiffs assert that Defendant's decision to require signed waivers before disbursing the death benefit,

was made in bad faith because they "are found nowhere in JNL's Policy." (*Id.* at 9.) According to Plaintiffs, "Under the terms of its own Policy, JNL had two months from the date Ms. Lindenberg submitted the death certificate of Mr. Lindenberg to pay her or interplead the death benefit," which Defendant failed to do. (*Id.*)

Similar to the previous issues, Plaintiffs have provided sufficient evidence to create a genuine issue of material fact regarding Defendant's breach of contract and statutory bad faith. Plaintiffs' evidence that Defendant had communicated to Tamarin Lindenberg that she was not the beneficiary of the Policy, that Nate Maas was behind in his work, and that the terms of the Policy did not contemplate requiring signed waivers as a prerequisite to disbursement of the death benefit provides a sufficient factual basis for a reasonable jury to find that Defendant's actions amounted to breach of contract and statutory bad faith.

█ For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment as to Plaintiff Tamarin Lindenberg's statutory bad faith claim.

## B. Zachary Lindenberg and Sophie Lindenberg's Claims for Breach of Contract and Statutory Bad Faith

Defendant moves the Court to "dismiss Zachary Lindenberg and Sophie Lindenberg's claims for breach of contract and statutory bad faith because they both fail as a matter of law." (ECF No. 88 at 15.) Defendant asserts that there is no dispute that Zachary Lindenberg and Sophie Lindenberg are not parties to the Policy, and that "any such interests have now been sufficiently waived through their court-appointed guardian ad litems." (*Id.*) Consequently, Defendant argues, "No genuine

issues of material fact exist as to whether Zachary Lindenberg and Sophie Lindenberg have any current rights to receive benefits under the Policy." (*Id.*)

Plaintiffs argue that although Zachary Lindenberg and Sophie Lindenberg have no rights to the death benefit, they are still entitled to recovery as third party beneficiaries. (*See* ECF No. 93 at 9.) Plaintiffs rely on *Estate of Wilson v. Arlington Auto Sales,* 743 S.W.2d 923 (Tenn.Ct.App.1987), where according to Plaintiffs, "the Court awarded the minor Plaintiff contract damages as well as damages under Tennessee's bad faith statute finding she was intended by the parties and known by the Defendant to be a beneficiary of the contract at the time the parties entered into the contract." (ECF No. 93 at 9.)

Plaintiffs' third party beneficiary argument is misplaced. Tennessee law "recognizes two categories of third party beneficiaries, intended and incidental." *Ferguson v. Nátionwide Prop. & Cas. Ins. Co.,* 218 S.W.3d 42, 56 (Tenn.Ct.App.2006). Only the intended beneficiary can maintain an action for breach of contract and consequently statutory bad faith. *See id.; see, e.g., Wilson,* 743 S.W.2d 923.

> In order to establish that plaintiff is an intended beneficiary to [an] agreement . . . it must establish (1) a valid contract made upon sufficient consideration between the principal parties and (2) the clear intent to have the contract operate for the benefit of a third party. *United American Bank of Memphis v. Gardner,* 706 S.W.2d 639, 641 (Tenn.App.1985). Intent to benefit may be shown if "there is either an expression in the contract that the contracting parties intended to benefit the third party (the 'intent to benefit' test) or proof that the promisor's performance would otherwise discharge a duty owed to a third party beneficiary by the promisee (the 'duty owed' test)." [*Moore Construction Co.*

*v. Clarksville Department of Electricity,* 707 S.W.2d 1, 9 (Tenn.App.1985) (citing Restatement (Second) of Contracts § 302 (1979)) ].

*Ferguson,* 218 S.W.3d at 56 (citing *First Tenn. Bank Nat'l Ass'n v. Thoroughbred Motor Cars, Inc.,* 932 S.W.2d 928, 930 (Tenn.Ct.App.1996)).

The key distinction between the present case and *Wilson* is that the minor plaintiff in Wilson was an intended beneficiary, whereas Zachary Lindenberg and Sophie Lindenberg are incidental beneficiaries. Plaintiffs do not assert that there was "an expression in the contract that the contracting parties intended to benefit" Zachary Lindenberg and Sophie Lindenberg. *See Ferguson,* 218 S.W.3d at 56. Furthermore, Plaintiffs do not assert that they have "proof that the promisor's performance would otherwise discharge a duty owed to" Zachary Lindenberg and Sophie Lindenberg. *See id.* Plaintiffs primary argument is that Zachary Lindenberg and Sophie Lindenberg were damaged by Defendant's refusal to pay the death benefit because "they were unable to have a proper funeral for [their father] and were thereafter sent to live with families they barely knew [due to the fact that] their mother was forced to find work out of state in order to earn a living to support them." (ECF No. 93 at 11.) In contrast, the Court in *Wilson* allowed the minor plaintiff to assert a breach of contract claim in addition to a statutory bad faith claim against the insurance company, 743 S.W.2d at 930, which is only possible if the person is an intended beneficiary, *Ferguson,* 218 S.W.3d at 56. Furthermore, the credit life policy at issue in *Wilson* served as credit for payment on a car that was purchased expressly for the minor Plaintiff. 743 S.W.2d at 925–26. Consequently, performance on the credit life policy discharged a duty owed to the minor Plaintiff.

The Court of Appeals decision in *Ferguson* provides further support for the proposition that Zachary Lindenberg and Sophie Lindenberg are not third party beneficiaries to the Policy. In Ferguson, the Court of Appeals adopted the holdings in sister jurisdictions that "one claiming to be a third-party beneficiary to an insurance contract who has never been granted a judgment against the insured . . . is at most an 'incidental beneficiary' of the insurance contract and cannot maintain an action against the insurance company." 218 S.W.3d at 56–58. Because Zachary Lindenberg and Sophie Lindenberg's guardians ad litem waived "any and all rights ZTAL and SML may have to the life insurance proceeds paid under Jackson National Life Insurance policy number 0070665040," (ECF No. 21 at PageID 169–70), they could not have "been granted a judgment against the insured" in this present case. *See Ferguson*, 218 S.W.3d at 56.

For these reasons, the Court finds that Zachary Lindenberg and Sophie Lindenberg are incidental beneficiaries and "cannot maintain an action against the insurance company." *See id.* Accordingly the Court hereby DISMISSES all remaining claims brought by Zachary Lindenberg and Sophie Lindenberg. The Court's dismissal of Zachary Lindenberg and Sophie Lindenberg's claims in no way affects Plaintiff Tamarin Lindenberg's rights in the present cause of action.

## C. Punitive Damages

Defendant moves the Court to dismiss "Plaintiffs' punitive damage . . . because the record is devoid of any facts that could justify a punitive award." (ECF No. 88 at 13.) Defendant first argues that punitive damages are precluded by Tennessee's Bad Faith statute. (*Id.*) This argument was rejected by the Court in its December 9, 2014 Order Denying Defendant's Motion to Dismiss Plaintiffs' Claim for Punitive Damages. (ECF No. 124.)

Second, Defendant argues that "Plaintiffs cannot meet their high burden of proof that is required to recover such damages under Tennessee law." (ECF No. 88 at 13.) According to Defendant, a mere showing of intentional breach is insufficient to prove punitive damages should be awarded. (*Id.* at 14.) Defendant asserts that Plaintiffs must prove breach of contract "was not only intentional but also motivated by 'ill will, hatred, or personal spite' or rendered in 'conscious disregard of a substantial and unjustifiable risk of such a nature that its disregard constituted a gross deviation from the standard of care that an ordinary person would exercise under all circumstances.'" (*Id.* (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn.1992); *Stewart Title Co. v. First American Title Ins. Co.*, 44 F.Supp.2d 942, 965 (W.D.Tenn.1999)).) Defendant argues that Plaintiffs cannot meet this burden because "Jackson never contested . . . that it was contractually obligated to pay the Proceeds to the proper beneficiary, and . . . Jackson has always been ready and willing to pay the claim upon its receipt of reasonable assurance that . . . it would not be subjected to multiple liabilities on the Policy." (*Id.* at 14–15.) Defendants further assert that its actions were not reckless because "Jackson's actions were based on legitimate and sufficient grounds and were not coupled with the requisite level of egregious conduct that is necessary to justify a punitive award." (*Id.* at 15.)

Although courts generally decline to award punitive damages in breach of contract cases, *Riad v. Erie Ins. Exch.*, 436 S.W.3d 256, 274 n. 3 (Tenn.Ct.App. 2013), and only award punitive damages in "cases involving only the most egregious of wrongs," *Hodges*, 833 S.W.2d at 901, Plaintiffs have provided sufficient evidence to

avoid summary judgment. First, Plaintiffs have provided evidence that Defendant imposed "extra-contractual demands" on Tamarin Lindenberg despite the existence of clearly established law. *Supra* Part III. A.2. Second, Plaintiffs' have provided evidence that Defendant was aware of Plaintiffs' financial distress. (ECF No. 93. at 12 (citing ECF No. 85–1 ¶¶ 82, 83, 84).) Third, Plaintiffs have produced evidence that Defendant ignored the opinion of the sales agent who drafted the Policy. (ECF No. 93 at 3–4 (citing ECF No. 85–1 ¶¶ 50–51).) Finally, Plaintiffs have proffered evidence that Defendant "concealed [from Plaintiff Tamarin Lindenberg] the fact that it based its denial on 'confusion' over Tamarin Lindenberg's state of residence." (ECF No. 93. at 12 (citing Exhibit 3, Dep. of Mass:43:25; 44:1–3; Ex 2 ¶ 2).)

Accordingly, the Court DENIES Defendant's Motion for Summary Judgment as to punitive damages.

## IV. CONCLUSION

For the reasons stated above, Defendant Jackson National Life Insurance Company's Motion for Summary Judgment (ECF No. 46) is GRANTED as the claims of Zachary Lindenberg and SML, and is DENIED as to all other claims.